Strafford
No. 98-035

THE STATE OF NEW HAMPSHIRE

v.

THEODORE WARREN

June 21, 1999

634

*Philip T. McLaughlin*, attorney general (*Charles T. Putnam*, senior assistant attorney general, on the brief and orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Theodore Warren, was convicted after a jury trial in Superior Court (*Fauver*, J.) of reckless manslaughter, *see* RSA 630:2, I(b) (1996), for the stabbing death of his friend, Kevin Connolly. We reverse and remand.

Based on the evidence adduced at trial, the jury could have found the following facts. In November 1996, the defendant, his wife, and his young child shared an apartment in Rochester with his sister-in-law and her two small children. Connolly also spent several nights per week at the apartment.

On November 19, 1996, the defendant acquired a knife. On the following day, Connolly also purchased a knife. That evening, Connolly and the defendant sat in the living room of the apartment talking, drinking beer, and playing with their knives. The defendant's wife asked that they put the knives away. Connolly placed his knife down beside him, and the defendant put his under a blanket on the couch where both he and Connolly were seated.

A short time later, an argument transpired between the defendant and his wife, at which point the defendant called his wife a derogatory name. When Connolly protested the derogatory term, the defendant accused Connolly of having an affair with his wife, and a fistfight ensued. During the fight, the defendant's glasses fell to the floor and were broken. Prior to this incident, the defendant's uncorrected vision had been measured at 20/200.

The fight ended with the defendant and Connolly seated on separate couches, but still arguing. The defendant then took out his knife, got off the couch, and stabbed Connolly. Connolly died as a result of a stab wound to his heart. When the police arrived minutes later, they found the defendant lying on the floor and bleeding from cuts to his hand. The cuts were consistent either with "offensive" wounds caused by the defendant's own knife in the course of the

stabbing, or with "defensive" wounds suffered in the course of warding off a knife attack. Thomas Blair, a Rochester police officer, asked the defendant where the knife was. He responded that he did not know. He then added that he was sorry, and that he and Connolly were fighting, and Connolly had pulled a knife. Both the defendant's wife and his sister-in-law testified that the victim had nothing in his hands immediately before the stabbing.

The defendant later told the police that he had thrown his knife into the kitchen ceiling, and the evidence suggested that he may have rinsed the knife prior to disposing of it. Tests to the defendant's knife revealed the presence of blood consistent with the victim's blood, but not the defendant's. Connolly's knife was found in its sheath on top of the kitchen refrigerator, and no one who testified at trial could account for how the knife had arrived there. Tests to the knife and sheath did not reveal the presence of blood. Also found at the scene was some toilet paper with blood on it consistent with the defendant's blood, but inconsistent with Connolly's blood.

The defendant was charged with second degree murder. *See* RSA 630:1-b (1996). Prior to trial, the defendant gave notice of his intent to assert self-defense. *See* SUPER. CT. R. 101; RSA 627:4 (1996). The State filed a motion *in limine* to exclude as hearsay, among other statements, the defendant's assertion to Officer Blair that Connolly had pulled a knife. The defendant objected, arguing that the statement was admissible either as an excited utterance, *see* N.H. R. EV. 803(2), a present sense impression, *see* N.H. R. EV. 803(1), or for the non-hearsay purpose of proving that the defendant believed that Connolly was armed. The trial court granted the State's motion.

At trial, the State called Officer Blair to testify. The State elicited from Blair that the defendant denied knowing where the knife was, and that he said that he was sorry. Prior to cross-examining Blair, the defendant sought permission to ask Blair about the defendant's assertion that Connolly and he had been fighting and that Connolly had pulled a knife. The defendant acknowledged that the court had already ruled the statement inadmissible, but argued that because the State had introduced the defendant's assertions that he did not know where the knife was and that he was sorry, the final assertion was necessary under the doctrine of completeness to provide a proper context for the assertions. The court denied the request, concluding that the pretrial ruling on the motion *in limine* precluded the defendant from introducing the statement.

The defendant did not testify at trial but took the position in his closing argument that the stabbing was in self-defense. The cuts to

his hand, he suggested, were the result of warding off Connolly's knife attack. The defendant also suggested that someone else had cleaned off Connolly's knife after the incident with the toilet paper that was found to contain the defendant's blood, and had placed it on the refrigerator. The State, however, argued to the jury that beginning with the defendant's attempt to hide the murder weapon, the defendant, over a period of "days" and "weeks," "began planting the seeds of [a] story, that self-defense story" advanced by defense counsel. The jury acquitted the defendant of second degree murder but convicted him of the lesser included offense of reckless manslaughter. This appeal followed.

On appeal, the defendant raises several claims of error, but we need only address one. Because we conclude that the trial court's refusal to admit the defendant's statement to Blair that Connolly had pulled a knife was error under the doctrine of verbal completeness, and that this error prejudiced his defense, we reverse and remand for a new trial.

"The admissibility of evidence is a matter within the trial court's broad discretion, and we will not upset the court's ruling absent an abuse of that discretion." *State v. Dewitt*, 143 N.H. 24, 26-27, 719 A.2d 570, 572 (1998). "To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Graham*, 142 N.H. 357, 362, 702 A.2d 322, 325 (1997) (quotation omitted).

■ Under the doctrine of verbal completeness, "a party has the right to introduce the remainder of [a] writing, statement, correspondence, former testimony, or conversation [that his or her opponent introduced] so far as it relates to the same subject matter and hence tends to explain or shed light on the meaning of the part already received." *State v. Crosman*, 125 N.H. 527, 531, 484 A.2d 1095, 1098 (1984) (quotation omitted). The purpose of this doctrine is to prevent a selective and out-of-context presentation of evidence from misleading the trier of fact. *See* 1 J. STRONG, MCCORMICK ON EVIDENCE § 56, at 225-26 (4th ed. 1992); *cf. State v. Keith*, 136 N.H. 572, 574, 618 A.2d 291, 292-93 (1992) (discussing New Hampshire Rule of Evidence 106); *Crosman*, 125 N.H. at 531, 484 A.2d at 1098. While the rule does not render evidence automatically admissible, *cf. Keith*, 136 N.H. at 574, 618 A.2d at 293, otherwise inadmissible evidence may be admitted to prevent a party from gaining a misleading advantage, *cf. id.; Rokus v. City of Bridgeport*, 463 A.2d 252, 255-56 (Conn. 1983).

The common law rule of completeness has been partially codified by New Hampshire Rule of Evidence 106. *See Beech Aircraft Corp.*

*v. Rainey*, 488 U.S. 153, 171-72 (1988) (discussing identical federal rule). That rule states:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

N.H. R. EV. 106. By its express terms, Rule 106 applies only to writings or recorded statements. The common law rule, however, applied to conversations as well as to writings and recorded statements. *See Crosman*, 125 N.H. at 531, 484 A.2d at 1098.

■ The defendant argues that while Rule 106 permits a party in certain circumstances to require an opponent to introduce simultaneously with a writing or recorded statement other related writings or recorded statements, the completeness doctrine applies to any verbal utterance. We agree. We note that nothing in Rule 106 appears to alter or conflict with the common law doctrine as applied to conversations. *See* N.H. R. EV. 100 (rules of evidence govern to extent they alter or conflict with common law evidence doctrines). Indeed, the Reporter's Notes to Rule 106 state that while "[c]onversations are not accorded similar treatment, . . . [t]he adverse party may . . . present related parts of conversations by way of cross-examination or as part of his own case." N.H. R. EV. 106 Reporter's Notes (quotation omitted). Accordingly, we conclude that Rule 106 has not replaced the common law rule of verbal completeness as applied to conversations. *Cf. United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993) (finding that Federal Rule of Evidence 611(a), which is identical to New Hampshire Rule of Evidence 611(a), gives the same authority to federal district courts as Rule 106 with respect to oral statements); *State v. Morales*, 136 N.H. 616, 619, 620 A.2d 1034, 1036 (1993).

In this case, the defendant made three separate assertions in a single statement to Officer Blair: (1) he did not know where the knife was; (2) he was sorry; and (3) they were fighting and Connolly pulled a knife. The State selectively entered into evidence the first two assertions, as well as evidence that the defendant had indeed hidden his knife. Without the qualifying statement that they had been fighting and Connolly had pulled a knife, a rational juror could have inferred that moments after the stabbing the defendant was confessing guilt, rather than offering an explanation for the event that was consistent with his defense. Thus, the exculpatory phrase

was necessary for the jury's proper evaluation of the inculpatory phrases that the State chose to elicit, and "to prevent [a] misleading impression . . . from taking root." *Keith*, 136 N.H. at 574, 618 A.2d at 292-93 (quotation omitted); *see Haddad*, 10 F.3d at 1259.

We reject the State's argument that the doctrine of completeness does not apply because the statement that the defendant sought to introduce had been ruled inadmissible in a pretrial ruling. The mere fact that the statement had been ruled inadmissible does not alter the trial court's discretion to reconsider that ruling on grounds not presented in the motion *in limine. See State v. Wilkinson*, 136 N.H. 170, 177, 612 A.2d 926, 930 (1992). Indeed, in *Crosman* we held that the trial court did not err in admitting evidence under the completeness doctrine that the court had ruled inadmissible in a pretrial ruling. *See Crosman*, 125 N.H. at 530-32, 484 A.2d at 1097-98.

█ Because the State's presentation of Officer Blair's testimony created the misleading impression that the defendant was confessing moments after the incident rather than offering an explanation consistent with his claim of self-defense, we conclude that the trial court's failure to admit the completing portion prejudiced the defendant's case and constituted an abuse of discretion. *Cf. Haddad*, 10 F.3d at 1259. Accordingly, we reverse and remand for a new trial.

*Reversed and remanded.*

All concurred.