Belknap
No. 97-742

THE STATE OF NEW HAMPSHIRE

v.

NORMAN BATCHELDER

October 25, 1999

*Philip T. McLaughlin*, attorney general (*Kelly A. Ayotte*, assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Norman Batchelder, was convicted after a jury trial in Superior Court (*Barry*, J.), of conspiracy to sell, and possession with the intent to distribute, marijuana. *See* RSA 629:3 (1996); RSA 318-B:2, :26 (1995). The defendant argues that the trial court erroneously admitted statements made by a co-defendant, Raymond Lavoie, under the co-conspirator exception to the hearsay rule. *See* N.H. R. EV. 801(d)(2)(E). We affirm.

At trial, undercover police detective Kenneth May testified to the following facts. The defendant and Lavoie lived in neighboring cottages at the Shoreline Apartments in New Hampton. The defendant lived in cottage #8, and Lavoie lived in cottage #3. In February 1996, Detective May met Lavoie at the Shoreline Apartments and purchased marijuana from a man whom he had met at Lavoie's cottage. Lavoie told Detective May that "the person he usually deals with is out of state, in Florida, at this time."

On March 13, 1996, Detective May returned to Lavoie's cottage. Lavoie told May that his "source" of marijuana was "Norman." When Lavoie said this, he looked in the direction of cottage #8. Detective May believed that the defendant lived in cottage #8

because he had observed a black Pontiac Fiero, registered to the defendant, parked there at different times.

On March 20, Detective May returned to Lavoie's cottage and asked for a half ounce of marijuana. Lavoie told the detective that "Norman wasn't home." Detective May observed that the Fiero was not parked at cottage #8.

Detective May returned to Lavoie's cottage later the same day. The Fiero was parked in front of cottage #8. Detective May asked Lavoie for a half ounce of marijuana and how much it would cost. Lavoie went to cottage #8. When he returned, he told the detective that the defendant wanted $80 for a half ounce. Detective May gave Lavoie $80 and asked him how much the defendant would charge for a quarter pound of marijuana. Lavoie then went back to cottage #8. He returned a short time later, handed the detective a bag of marijuana, and said that the defendant would charge $500 for a quarter pound.

On March 26, 1996, Detective May returned to Lavoie's cottage. He asked Lavoie how much the defendant wanted for a quarter pound of marijuana. Lavoie went to cottage #8, and when he returned, told Detective May that the defendant wanted $520 for a quarter pound. Detective May said that he would have to leave to get the money. He left, returned a half hour later, and told Lavoie that he had the money. Lavoie went over to cottage #8 and spoke to the defendant. Lavoie then told Detective May that he could not "run for the marijuana" because the defendant had company at his cottage. Detective May told Lavoie that he was going to the store to get a beer, and he then drove to a local Citgo station. While there, Detective May observed the defendant drive up in his Fiero and "eyeball" him.

Detective May returned to Lavoie's cottage. Lavoie then walked to cottage #8, where Detective May could see the defendant standing on the porch. Lavoie returned and said that the defendant wanted Detective May to give the money to Lavoie. At this point, a State trooper and surveillance units arrived at the cottages. As soon as the trooper drove in, the defendant jumped off the porch and ran into the woods, where he was promptly arrested.

The defendant was charged with conspiracy to distribute marijuana and possession with intent to distribute marijuana. At trial, the defendant objected to, and moved to strike, all hearsay statements made by Lavoie to Detective May regarding the identity of Lavoie's drug supplier. The State argued that the statements were non-hearsay under the co-conspirator exception to the hearsay rule. See N.H. R. Ev. 801(d)(2)(E). The trial court found that the State

had made a sufficient showing that a conspiracy existed between the defendant and Lavoie, and admitted the statements under the co-conspirator exception. The defendant was convicted on both charges, and this appeal followed.

The defendant argues that there was insufficient independent evidence of the defendant's participation in a conspiracy to justify admitting the statements under the co-conspirator exception to the hearsay rule.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted, N.H. R. EV. 801(c), which is not specifically excluded as non-hearsay by Rule 801(d). "Whether a statement is inadmissible hearsay, or whether an exclusion or exception applies, are questions for the trial court, whose determination we will uphold unless it is clearly erroneous." *State v. Favreau*, 134 N.H. 336, 339, 592 A.2d 1136, 1137 (1991).

Rule 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." N.H. R. EV. 801(d)(2)(E). "[O]ut-of-court statements by co-conspirators are admissible as exceptions to the hearsay rule when [the statements are] made during the pendency of the criminal enterprise and in furtherance of the criminal object, as long as the existence of the conspiracy is sufficiently proved by independent evidence." *State v. Gonzalez*, 136 N.H. 354, 356, 615 A.2d 640, 641 (1992) (quotations omitted). Without objection of the parties, the trial court applied the preponderance of the evidence standard, and on appeal, neither party challenges the use of that standard. Accordingly, for purposes of this appeal only, we will assume that the State was required to prove the existence of the conspiracy under that standard. *But see id.* (proof required is that of a *prima facie* case). "'Independent evidence' is any evidence that is otherwise admissible." *State v. Gibney*, 133 N.H. 890, 897, 587 A.2d 607, 611 (1991).

The State urges us to adopt the United States Supreme Court's interpretation of Federal Rule of Evidence 801(d)(2)(E). "In *Bourjaily v. United States*, 483 U.S. 171, 181 (1987), the Court held that trial courts may examine the hearsay statements sought to be admitted in determining whether there is sufficient evidence of a conspiracy under Rule 801(d)(2)(E)." *Gibney*, 133 N.H. at 898, 587 A.2d at 611 (quotation omitted). Applying the federal interpretation in this case would have permitted the trial court to consider all of Lavoie's otherwise inadmissible hearsay statements in deciding

whether there was a conspiracy and whether, therefore, those same statements were admissible. "However, because we hold the conspiracy to have been sufficiently proved by independent evidence produced by the State, we decline to consider whether Rule 801(d)(2)(E) of the New Hampshire Rules of Evidence . . . should be interpreted as the State suggests in accordance with *Bourjaily*." *Gibney*, 133 N.H. at 898, 587 A.2d at 611.

The defendant conceded at oral argument that events after the statements were made can be considered independent evidence. Therefore, we will consider Lavoie's statements in the context of all the evidence, including events that may have occurred subsequent to the statements.

We conclude that sufficient independent circumstantial evidence implicated the defendant in a conspiracy with Lavoie for the trial court to have found by a preponderance of the evidence that the defendant and Lavoie were co-conspirators when Lavoie made the contested statements to Detective May. On March 13, 1996, Lavoie looked in the direction of cottage #8 when identifying his drug source to Detective May. Detective May observed a black Pontiac Fiero, registered to the defendant, parked at cottage #8 at various times. When Detective May first returned to Lavoie's cottage on March 20, 1996, and asked Lavoie for marijuana, Lavoie could not make the sale — the defendant's Fiero was not then parked at cottage #8. When Detective May later returned to Lavoie's cottage, the defendant's Fiero was parked at cottage #8. Detective May then watched Lavoie walk to cottage #8 with money given to him by the detective and return with marijuana.

On March 26, 1996, Detective May again went to Lavoie's cottage to purchase marijuana. When Detective May left Lavoie's cottage and drove to a local Citgo station, he observed the defendant drive up in his Fiero and "eyeball" him. When Detective May returned to Lavoie's cottage, he watched Lavoie walk to cottage #8, where he could see the defendant standing on the porch. Finally, when a State trooper arrived, Detective May observed the defendant jump off the porch and run into the woods.

■ All of this evidence, and the inferences that can be drawn therefrom, constitute sufficient independent evidence to demonstrate a conspiracy by a preponderance of the evidence. We disagree that the evidence, viewed in its entirety, was innocuous. When considered as a whole, the independent evidence satisfies the State's burden of proving a conspiracy. Even assuming that the trial court erred by considering Lavoie's statements as independent evidence,

we conclude that there was sufficient independent evidence of a conspiracy. Therefore, we hold that the trial court did not err in admitting Lavoie's statements.

*Affirmed.*

All concurred.