Rockingham
No. 97-715

## THE STATE OF NEW HAMPSHIRE

v.

## PAUL YOUNG

December 16, 1999

*Philip T. McLaughlin*, attorney general (*Malinda R. Lawrence*, assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Paul Young, was convicted after a jury trial in Superior Court (*Gray*, J.) of felonious sexual assault. *See* RSA 632-A:3 (1996 & Supp. 1998). We affirm.

Based on the evidence introduced at trial viewed most favorably to the State, *see State v. Smart*, 136 N.H. 639, 643, 622 A.2d 1197, 1200, *cert. denied*, 510 U.S. 917 (1993), the jury was entitled to find the following facts. The defendant and the victim's mother began dating in 1989 when the victim was eight years old. Soon thereafter, the defendant entered the victim's bedroom one evening while she was in bed and rubbed her buttocks and breasts with his hand (bedroom incident). Melissa V., a childhood friend of the victim, was present and observed the bedroom incident. On a subsequent occasion, the defendant touched the victim's vagina while the two were sitting on a couch (couch incident).

Although the victim discussed the bedroom incident with Melissa V. shortly after it occurred, she first reported that the defendant had touched her to Angie S., her sister-in-law, in 1991, approximately one year after the incidents. She told her mother on the following day, but her mother stated that she did not believe her. The victim also told Doreen S., the mother of one of her friends, that the defendant had touched her, and Doreen S. contacted the division for children and youth services, which is now entitled the division for children, youth and families (DCYF). *See* Laws 1994, ch. 212. Although DCYF apparently investigated the matter in 1991, the record is unclear as to its ultimate disposition.

The victim's mother and the defendant married in August 1992 and separated in March 1994. After the victim disclosed the bedroom and couch incidents to a counselor, the matter was referred to the Portsmouth Police, who began an investigation in February 1996. The defendant was charged with three acts of felonious sexual assault for engaging in sexual contact with the victim's breasts, buttocks, and vagina, *see* RSA 632-A:3, III, and was convicted on each indictment. This appeal followed.

On appeal, the defendant argues that the trial court erred in: (1) admitting as substantive evidence several prior consistent statements of the victim; and (2) instructing the jury that there was no evidence of a DCYF investigation, and that the jury was not to consider evidence of any investigation other than the one that led to the charges against the defendant. We address each argument in turn.

## I. Prior Consistent Statements

The State called the victim as its first witness. On direct examination, after testifying about the bedroom and couch incidents, the victim testified that she told Angie S., Doreen S., and her mother after the incidents that the defendant "had been touching" her. She testified that she made similar statements to a friend, Renee A., and to her half-sister, Jennifer P. She could not remember, however, the specifics of what she had told each of these individuals. The victim also testified that she spoke with Melissa V. shortly after the bedroom incident about what Melissa V. had observed.

On cross-examination, the victim testified that she was upset when the defendant and her mother married. The following exchange transpired:

Q. Isn't it true that you were upset long before that about your mother's relationship with [the defendant]?

A. When he touched me, yes.

Q. Before that you didn't like the idea of having [the defendant] or another man come in and substitute for your father; did you?

A. I was fine with [the defendant]. We got along.

Q. During this time, did you make attempts to go and live with your father?

A. I don't remember if it was before [the defendant] touched me or afterwards.

Q. But it may have been before?

A. When I first started seeing my father again, I hadn't seen him for years, and I wanted to be with him.

Q. Even at that point, you wanted out of that house, isn't that true?

A. To be with my father, yes.

Q. From that time on, you and your mother began to have confrontations about a number of things, isn't that true?

A. All kids fight with their parents.

. . . .

Q. Isn't it true that [the defendant] from time to time intervened when that happened?

A. When he intervened, what do you mean?

Q. Well, he would stand up for your mom?

A. Well, when he stood up for my mom, he stood up a little bit too much.

Q. There were a couple of times when he used some force; isn't that true?

A. A little bit too much force, yes.
Q. You didn't like that at all; did you?

. . . .

Q. And because of those things happening and [the defendant] trying to discipline you, you didn't want him there any more; did you?
A. Well, I mean — no.

. . . .

Q. In 1993, didn't you threaten to leave home unless [the defendant] left?

. . . .

A. I said "I'm not coming home."
Q. At that point, he did leave?
A. Yes.
Q. And at that point, he hadn't touched you for over three years, even on your version of the facts?
A. He hadn't touched me sexually, no.
Q. But he had disciplined you?
A. He had physically disciplined me.

On redirect, the victim testified that she had told "everybody" that the defendant had touched her before he ever physically disciplined her or assumed an active role in her discipline.

The State then called Melissa V., and asked whether the victim had ever discussed with her the couch incident, and what she had said. After the defendant objected generally, the State explained that the statement was being offered under New Hampshire Rule of Evidence 801 to rebut "a suggestion of improper motive by defense counsel in cross-examination of [the victim] with respect to her desire to get [the defendant] out of the house and keep him from her mother." The trial court overruled the objection. The State next called Angie S. When defense counsel inquired as to the purpose of her testimony, the State explained that it was being offered under Rule 801 to rebut the improper motive implicit in the cross-examination of the victim "that she didn't like [the defendant] and did not want him living with her mother." Defense counsel stated, "We are not alleging a recent fabrication. We are alleging that it is not true from the very beginning." The trial court overruled the objection. The State next called Jennifer P., and defense counsel stated, "For the record, I have the same objection to this witness."

After Melissa V., Angie S., and Jennifer P. had testified to statements that the victim had made about the bedroom and couch incidents, the defendant requested that the jury be instructed not to

consider the statements substantively. Citing *State v. McSheehan*, 137 N.H. 180, 624 A.2d 560 (1993), he argued that because his position was that the victim's motive to falsify arose prior to the consistent statements in 1991, the statements were inadmissible under Rule 801 as substantive evidence. The State contended that because the defendant had raised physical discipline as a motive to fabricate and because the victim had testified that the physical discipline postdated the statements, the statements were admissible as substantive evidence under Rule 801. The State represented, however, that the testimony of Doreen S. would not be offered substantively because it postdated the acts of physical discipline.

Thereafter, the State called Doreen S., the victim's mother, Renee A., and the investigating officer for the Portsmouth Police, who each testified to statements that the victim had made that were consistent with her trial testimony. With respect to each of these witnesses, defense counsel merely stated that he had the "same objection" to the testimony that he had made previously. The trial court instructed the jury that they could consider the prior consistent statements as substantive evidence.

New Hampshire Rule of Evidence 801(d)(1)(B) provides:

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

The defendant argues that under Rule 801(d)(1)(B), a prior consistent statement is inadmissible unless the proffering party affirmatively demonstrates that the statement was made prior to the motive to fabricate that it purportedly rebuts, and the trial court explicitly identifies: (1) the motive that is being rebutted; (2) when that motive arose; and (3) when the statement was made. Because the State failed to demonstrate affirmatively that the statements predated any motive to fabricate, and because the trial court failed to make explicit findings with respect to each statement as to the motive that it rebutted, when the motive arose, and when the statement was made, the defendant argues that the trial court erred in admitting each statement. Moreover, even if the necessary preliminary findings are implied, the defendant argues that the record does not support those findings. The State counters that the consistent statements were admissible to rebut the motive to fabricate implicit in the cross-examination of the victim that she wanted to destroy

her mother's relationship with the defendant because he physically disciplined her.

We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion. *See State v. Warren*, 143 N.H. 633, 636, 732 A.2d 1017, 1019 (1999). *But see State v. Batchelder*, 144 N.H. 249, 251-53, 740 A.2d 1033, 1035-36 (1999); *State v. Favreau*, 134 N.H. 336, 339, 592 A.2d 1136, 1137 (1991). "To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Warren*, 143 N.H. at 636, 732 A.2d at 1019 (quotation omitted).

■ Under Rule 801(d)(1)(B), a prior consistent statement is admissible as substantive evidence only if it predates the motive to fabricate that it is purported to rebut. *See McSheehan*, 137 N.H. at 184, 624 A.2d at 562. Under the express terms of Rule 801(d)(1)(B), however, the motive may be implicit. *See United States v. Baron*, 602 F.2d 1248, 1253 (7th Cir.), *cert. denied*, 444 U.S. 967 (1979) (construing identical federal rule). Moreover, if an improper motive that postdates the consistent statement "fairly arises from the line of questioning [counsel] pursued," it is irrelevant for purposes of Rule 801 that counsel did not intend for that motive to arise. *Id.; see also State v. Fredette*, 462 A.2d 17, 24 (Me. 1983) (construing similar Maine rule).

■ We reject the defendant's argument that the trial court's failure to make explicit findings as to the motive, the date the motive arose, and the date the statements were made requires reversal. Rule 801(d)(1)(B) by its terms does not require that the trial court make such explicit findings, and the defendant has not argued that the interest of justice demands that we impose those requirements pursuant to our supervisory authority. *Cf. State v. McGlew*, 139 N.H. 505, 508-10, 658 A.2d 1191, 1194-95 (1995) (exercising supervisory authority to require explicit findings under New Hampshire Rule of Evidence 404(b)). "While, in every case, we would strongly encourage the trial court to assist our review by making specific findings to support its evidentiary rulings, the failure to do so, in and of itself, does not require reversal." *State v. Dalphond*, 133 N.H. 827, 830, 585 A.2d 317, 320 (1991), *overruled in part by McGlew*, 139 N.H. at 510, 658 A.2d at 1195. Rather, so long as the record fairly supports preliminary findings of fact necessary to uphold the trial court's rulings on admissibility, we will generally infer that the trial court made those findings. *See Geralds v. Champlin*, 93 N.H. 157, 158, 37 A.2d 155, 156 (1944).

The cross-examination of the victim in this case clearly implied that because the defendant physically disciplined her, she did not want him living in her house. The inference follows that she concocted the story of sexual assault to force the defendant out. Indeed, that this was the defendant's intended inference is clear from his closing argument:

> [I]f you find that the incidents that [the victim] testified to didn't happen as she described them, then it's clear from her own testimony that she didn't like the idea of [the defendant's] relationship with her mother. She didn't like his interference in the household. She particularly didn't like his attempts to discipline her, and to take her mother's side when these incidents happened . . . .

The State in its offers of proof argued that the statements it sought to introduce were being offered to rebut the improper motive that the victim wanted to force the defendant out of the house because of the physical discipline. We reject the defendant's argument that because the State failed to raise physical discipline specifically as the improper motive until after Melissa V., Angie S., and Jennifer P. had testified, it failed to preserve that argument. Even assuming that a non-appealing party is required to preserve its arguments for appellate review, it is clear from the cross-examination of the victim that the defendant sought to establish that "because of . . . [the defendant] trying to discipline [the victim], [she] didn't want him there any more." Thus, we read the State's references to the victim's desire to get the defendant out of the house and to the physical discipline as referencing the same motive. Moreover, the State on redirect of the victim established that she had told "everybody" about the assaults prior to the acts of physical discipline. Thus, we conclude that the State sufficiently demonstrated that the statements to the victim's mother, Melissa V., Angie S., Doreen S., Renee A., and Jennifer P. each predated the improper motive.

We reject the defendant's argument that the State's representation that the statement of Doreen S. postdated the physical discipline prevented the trial court from admitting her testimony as substantive evidence. Even if we assume that the representation constituted a concession, the only objection the defendant made when the testimony was offered was, "I have the same objection to this testimony as previously." We conclude that such a general objection was insufficient to hold the State to its "concession." *See* *State v. Wisowaty*, 133 N.H. 604, 607-08, 580 A.2d 1079, 1080-81

(1990) (court will not consider grounds for objection not specified at trial).

Although the defendant on appeal points to testimony adduced on cross-examination of some of the witnesses establishing that the consistent statements they had testified to on direct might have postdated even the acts of physical discipline, the defendant did not move to strike their testimony. Moreover, when the defendant requested the limiting instruction, he argued only that the victim's motive arose in 1991, prior to the statements. Because the defendant did not argue at trial that those statements postdated the later motive that the State sought to rebut, he cannot do so on appeal. *See State v. Croft*, 142 N.H. 76, 80, 696 A.2d 1117, 1120-21 (1997).

■ With respect to the testimony of the investigating police officer, the State concedes that it was error to admit his testimony as substantive evidence under Rule 801(d)(1)(B). The State argues, however, that the error was harmless beyond a reasonable doubt. We agree.

> [T]he State bears the burden of proving that an error is harmless, a burden satisfied by proof beyond a reasonable doubt that the erroneously admitted evidence did not affect the verdict. In deciding whether the State has met its burden, we consider the strength of the alternative evidence presented at trial. We also consider the character of the inadmissible evidence, including whether the evidence was cumulative or inconsequential in relation to the State's evidence.

*State v. Fischer*, 143 N.H. 311, 316-17, 725 A.2d 1, 4 (1999) (quotation omitted). In this case, we conclude that the officer's testimony, in view of the testimony of the six other witnesses who testified to the victim's consistent statements, was merely cumulative, and did not affect the verdict. *See id.* at 317, 725 A.2d at 5.

■ Finally, the defendant argues that the trial court, in charging the jury on the use of prior consistent statements, erred in instructing that the jury could determine whether any of the statements were admissible under Rule 801(d)(1)(B). We need not address this argument, as the defendant objected only on the ground that the charge instructed that the prior consistent statements "may be taken as substantive evidence." Because the defendant did not argue that the trial court improperly delegated its responsibility to the jury by instructing it to rule on the admissi-

bility of the statements, he cannot do so on appeal. *See State v. Sinbandith*, 143 N.H. 579, 582, 729 A.2d 994, 997 (1999).

## II. Jury Instructions

Lastly, we address the defendant's argument that the trial court erred in instructing the jury not to consider evidence of the DCYF investigation. In its opening statement, the State presented its theory that the adults in the victim's life, to whom she had initially reported the sexual abuse, betrayed her trust. As part of that theory, the State represented that DCYF had declared the victim's charges to be unfounded and had stated that they referred her case to the Portsmouth Police, when in fact the Portsmouth Police never received a referral. The defendant waived his opening statement.

At trial, several witnesses testified that they had been interviewed by DCYF regarding the victim's allegations. Both the victim and her mother testified that after speaking with DCYF, nothing happened. The defendant testified that he was never interviewed by DCYF. On cross-examination of the victim, the defendant elicited that the victim never told the DCYF investigator about the couch incident.

In their closing arguments, both the defendant and the State referenced the DCYF investigation. The defendant stated that although the victim, her mother, and their minister were each interviewed by DCYF, nothing happened subsequent to the interviews. Defense counsel continued, "And I think that you can consider this. This was undertaken, and no action was taken, and [the defendant] never heard a thing about the case for another four years, until he gets a call . . . from [the] Portsmouth Police . . . ." The State argued, "You heard the defendant tell you that nobody from DCYF even ever interviewed him. I mean does it sound to you like that was a real thorough investigation?"

After the closing arguments, the trial court instructed the jury. Apparently *sua sponte*, the trial court gave the following instruction:

> In your deliberations, you are not to consider any prior investigations. By that, I specifically mean some allegation of investigations or some information about investigations some years ago by the Department of Children, Youth and Families, because there has been no evidence of that investigation. As to how it turned out, how it was conducted, anything else, you will not in your deliberation consider any prior investigations at all except investigations which led to the charges in this case.

The defendant objected, arguing that both parties had introduced evidence that the investigation occurred and that nothing happened subsequently, and that the jury had a right to consider those facts in their deliberations.

On appeal, the defendant argues that the trial court improperly made a factual finding that there was no evidence of the DCYF investigation, and that the finding prejudiced the defendant by instructing the jury to ignore potentially exculpatory information. Specifically, the defendant argues that the jury was instructed to ignore the fact that the victim never told the DCYF about the couch incident. Moreover, the defendant argues that by ordering the jury to ignore the DCYF investigation, "the trial court gave its imprimatur to the State's theory that the only competent investigation, the only investigation with a correct outcome, was the one that led to indictment." Thus, the defendant argues that the trial court invaded the exclusive province of the jury to determine which facts were proved, and violated Part I, Article 15 of the New Hampshire Constitution.

■ As an initial matter, we note that the defendant failed to raise the constitutional issue in his objection. Because "[w]e will not review on appeal constitutional issues not presented below," *State v. Alexander*, 143 N.H. 216, 219, 723 A.2d 22, 25 (1998) (quotation omitted), we decline to review the constitutional dimension of the defendant's argument, *see State v. Plante*, 134 N.H. 456, 459, 594 A.2d 1279, 1282 (1991). Accordingly, "we will consider his argument under an abuse of discretion standard." *Id.*

"The scope and wording of jury instructions are within the sound discretion of the trial judge and are evaluated as a reasonable juror would have interpreted them." *State v. MacRae*, 141 N.H. 106, 114, 677 A.2d 698, 704 (1996). We review the challenged instruction "in the context of the entire charge and all of the evidence." *State v. Newell*, 141 N.H. 199, 205, 679 A.2d 1142, 1146 (1996) (quotation omitted).

■ In context, we conclude that the trial court's instruction, while perhaps not a model of clarity, did not "invade[] the exclusive province of the jury to decide what facts are proved by competent evidence." *State v. Ross*, 141 N.H. 397, 400, 685 A.2d 1234, 1235 (1996) (quotation omitted). Prior to giving the instruction at issue, the trial court instructed the jury that they could evaluate the credibility of witnesses, and that in evaluating credibility, they could consider prior inconsistent statements made by the witnesses. Moreover, while there was testimony that some of the witnesses

spoke with DCYF investigators and that the victim and her mother did not hear from the investigators after speaking with them, the ultimate findings and disposition of the DCYF investigation were not introduced at trial. Although the State mentioned in its opening statement that DCYF determined that the charges were unfounded, the jury was properly instructed not to consider the State's representations in its opening as evidence. *See State v. Martin*, 138 N.H. 508, 516, 643 A.2d 946, 951 (1994) (opening statement not evidence). Accordingly, in light of the entire charge and the evidence, a reasonable juror would not have understood the instruction to mean that an investigation never occurred or that they could not consider whether the victim failed to disclose the couch incident to the DCYF investigator. Rather, the charge properly instructed the jury not to speculate from circumstantial evidence as to the outcome of the DCYF investigation, thereby assuring that the jury would not merely defer to what that agency might have found.

We conclude that the defendant's remaining arguments are without merit and warrant no further review. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.