Merrimack
No. 99-241

THE STATE OF NEW HAMPSHIRE

v.

JAMES DALE

April 13, 2001

*Philip T. McLaughlin*, attorney general (*Kelly A. Ayotte*, senior assistant attorney general, on the brief, and *Christopher H. M. Carter*, senior assistant attorney general, orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

DALIANIS, J. The defendant, James Dale, appeals his convictions, following a jury trial in Superior Court (*McGuire*, J.), for reckless second degree murder and two counts of aggravated felonious sexual assault. *See* RSA 630:1-b, I(b) (1996); RSA 632-A:2, I(a) (Supp. 2000). We affirm.

The following facts are undisputed. On July 3, 1997, the victim, a six-year-old girl, was found dead in the apartment she shared with her mother, sister and her mother's boyfriend, Richard Buchanan. An autopsy revealed that she had been raped and had died from asphyxiation. The victim's mother told the police that she saw Buchanan raping and suffocating her daughter with a pillow. Buchanan was indicted for murder in September 1997. The State eventually dropped the charges after DNA testing conclusively excluded him as the source of the sperm in and on the victim's body.

At the time of the murder, the defendant lived in the same apartment building as the victim. In August 1997, he left New Hampshire, and in December 1997, he was arrested in Arizona for probation violations. DNA testing showed that the defendant could not be excluded as the source of the sperm found in and on the victim's body.

On appeal, the defendant asserts that the trial court erred by: (1) excluding out-of-court statements by Buchanan; and (2) failing to give the jury an alibi instruction.

I

The defendant sought to introduce the testimony of a State police officer that when he asked Buchanan whether it was possible that on

the night of the murder, he had an alcohol black out, became sexually aroused and stumbled into the victim's room, Buchanan responded that it was possible, but that he did not remember. The defendant also sought to introduce the testimony of one of Buchanan's friends that Buchanan told him that "if [he] did anything like this, . . . [he] must have been blacked out" and that "[h]e had no recollection of whether he did [it] or not." The defendant argues that these statements are admissible as declarations against interest. *See* N.H. R. EV. 804 (b)(3). We disagree.

"We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion." *State v. Young*, 144 N.H. 477, 482 (1999). "To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

A statement against interest is admissible under Rule 804(b)(3) if it

> was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in this position would *not* have made the statement unless the person believed it to be true.

N.H. R. EV. 804(b)(3).

■ The defendant first argues that Buchanan's statements were objectively "against interest." We disagree. Buchanan stated both to his friend and to the police officer that he did not remember what happened on the night of the murder and that it was "possible" that he had committed the crime. It was also equally possible that he had not. Such equivocal statements are insufficiently self-incriminating to fall within Rule 804(b)(3). *See, e.g., State v. Mallar*, 127 N.H. 816, 818 (1986) (in infanticide case, declarant admitted to shaking infant); *State v. McLaughlin*, 135 N.H. 669, 671-72 (1992) (in homicide case, declarant told son about murder in detail and admitted to being present during it); *State v. Kiewert*, 135 N.H. 338, 343-44 (1992) (statement at issue was an express confession). Because we hold that the statements, viewed objectively, were not against interest, we do not reach the parties' other arguments as to their admissibility under Rule 804(b)(3).

Alternatively, the defendant argues that the trial court's decision not to permit him to introduce the statements violated his constitutional right to present all proofs favorable to his defense. *See* N.H.

CONST. pt. I, art. 15. We disagree. The constitutional right to produce all proofs gives the defendant the right only to produce witnesses, not their inadmissible testimony. *See State v. Graf,* 143 N.H. 294, 296-97 (1999).

## II

The defendant asserts that the trial court erred by refusing to give an alibi instruction. We disagree.

"We review the trial court's failure to give [an alibi] instruction for an abuse of discretion." *State v. Laurent,* 144 N.H. 517, 522 (1999). "In assessing the defendant's appeal, we are mindful that the trial court has discretion to determine whether or not a particular instruction is necessary to assist the jury in reaching a verdict." *State v. Seymour,* 142 N.H. 620, 622 (1998) (quotation and brackets omitted). "A trial court's denial of a proposed jury instruction is reviewed in the context of the entire charge and all of the evidence presented at trial." *Id.*

Although the scope and wording of jury instructions is generally within the sound discretion of the trial court, the court "must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense." *State v. Jaroma,* 137 N.H. 143, 153 (1993) (quotation omitted). "Some evidence" is more than a "minutia or scintilla of evidence." *State v. Cote,* 143 N.H. 368, 378 (1999) (quotation omitted).

The State argues that the defendant was not entitled to an alibi instruction because an alibi is not a "theory of defense" and implies that therefore a more stringent standard than "some evidence" should apply. We need not resolve this issue because the evidence here does not meet the "some evidence" standard.

At the close of the trial, the defendant submitted an alibi instruction, to which the State objected, arguing, in part, that "[t]here's no evidence to suggest that the defendant was somewhere else which would be a traditional alibi defense." The trial court agreed with the State and refused to give the instruction.

An alibi "places the defendant at the relevant time of crime in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." BLACK'S LAW DICTIONARY 71 (6th ed. 1990). "[T]o be legally effective [the alibi defense] must cover the entire time during which the crime is alleged to have been committed." *Greenhow v. United States,* 490 A.2d 1130, 1134 (D.C. 1985) (quotation omitted). "The alibi instruc-

tion is appropriate only when the defense evidence demonstrates the defendant's presence elsewhere for the entire period of time the government's evidence shows he was involved in criminal activity." *Bright v. United States*, 698 A.2d 450, 459 (D.C. 1997) (quotation and brackets omitted).

■ At trial, the defendant's request for an alibi instruction was expressly based upon the testimony of William Simpson, a police officer, who testified that at approximately 12:30 a.m. on July 3 he found the defendant intoxicated about 400 to 500 feet from his building and that he drove the defendant home.

The request was also based upon the medical examiner's testimony regarding the time of the victim's death. The defendant urged that this testimony supported a finding that the victim died "significantly earlier" than 12:30 a.m. on July 3. The medical officer also testified, however, that based upon all of the factors he examined, he estimated that the victim died either late in the evening on July 2 or early in the morning on July 3. For instance, based upon the victim's "lividity," he estimated that she died between 3:30 a.m. and 5:30 a.m. on July 3.

From this testimony, the trial court could have found that there was insufficient evidence presented to support a rational finding that the defendant was in a location other than the murder scene when the victim died. *See State v. Rosciti*, 144 N.H. 198, 201 (1999). Simpson's testimony established only that at 12:30 a.m., the defendant was not at the apartment building, although he was nearby. Even if the victim died "significantly earlier" than 12:30 a.m. on July 3, Simpson's testimony did not establish that the defendant was elsewhere at the time.

On appeal, the defendant also relies upon the testimony of a police officer who testified that the defendant told him that after he left work on July 2, he did not return home until he was picked up by another police officer. The officer testified that the defendant said that he was "probably drinking in Concord." Even though this testimony provides "some evidence" that the defendant was somewhere other than the murder scene before 12:30 a.m. on July 3, it is legally insufficient to support a rational finding that he was elsewhere after 12:30 a.m., when the State claimed the murder took place. *See id.*

All other issues raised in the defendant's notice of appeal, but not briefed, are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred.