Delvin White v. Warden          CV-02-280-JM  07/11/03  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


<u>Delvin White</u>

   v.                                    Civil No. 02-280-JM
                                            Op. No. 2003 DNH 117
<u>Jane Coplan, Warden</u>
<u>New Hampshire State</u>
<u>Prison For Men</u>

_____


<u>**ORDER**</u>

     Petitioner Delvin White is an inmate at the New Hampshire State Prison for Men ("NHSP"). In 1997, White was found guilty on charges of committing one count of aggravated felonious sexual assault and two counts of felonious sexual assault following a jury trial in the Superior Court, Hillsborough County. White's convictions were affirmed on appeal to the Supreme Court of New Hampshire ("NHSC") in December 2000. In the instant action, White seeks a federal writ of habeas corpus claiming that his right to confront witnesses, secured by the Sixth Amendment to the United States Constitution, was violated in the New Hampshire state courts because the trial court prohibited all cross examination of the complaining witnesses concerning their prior allegations of sexual assault against other persons even though White was able to establish the falsity of those prior

allegations to a "reasonable probability." White contends that the trial court's complete denial of any cross-examination concerning the complaining witnesses' prior allegations of sexual assault was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court of the United States. This is White's first petition for a writ of habeas corpus in the federal district court.

The Respondent in this action is Jane Coplan, NHSP Warden. Respondent filed a motion for summary judgment on White's habeas petition under Rule 11 of the Rules Governing § 2254 Cases and Rule 56 of the Federal Rules of Civil Procedure. Respondent contends that there is no genuine issue of material fact, and that she is entitled to judgment as a matter of law. White filed an objection. The Court requested that the parties submit supplemental memoranda after the United States Court of Appeals for the First Circuit ("First Circuit") issued its en banc opinion in Ellsworth v. Warden, N.H. State Prison, No. 02-1226, -- F.3d --, 2003 WL 21374024 (1st Cir. June 16, 2003), which addresses issues similar to those raised in the instant case.

After carefully reviewing the parties' submissions, and the relevant authorities, the Court finds that White has established

2

that his Sixth Amendment Confrontation Clause rights were violated by the decisions of the New Hampshire state courts. The Court finds that the New Hampshire state courts imposed an unreasonable restriction on White's right to cross-examine the complaining witnesses under the facts of this particular case. It is the opinion of this Court that White's convictions were not the result of a fair trial. Accordingly, for the reasons set forth below, Respondent's motion for summary judgment is denied and the petition for a writ of habeas corpus is granted.

## Background

### I. Factual Background[1]

On March 2, 1996, White spent the afternoon visiting a friend and his girlfriend at their apartment in Manchester, New Hampshire. The friend had two daughters, ages twelve and eight, and the friend's girlfriend had two sons, all of whom were together in the apartment that day. After spending the afternoon playing cribbage, listening to the radio, and drinking beer with his friend, White was invited to have dinner at the friend's house. It was later agreed that White would spend the night.

At White's criminal trial, the younger daughter testified

---

[1]The facts are taken primarily from the NHSC's opinion in State v. White, 145 N.H. 544, 765 A.2d 156 (2000).

3

that while she sat with White on a day bed watching television, White rubbed her breasts, put his hand down her pants, and "stuck his finger in." When the daughter told her father what happened, the father attacked White. During this confrontation, the older daughter came out of a bedroom crying hysterically. She later told a doctor that earlier that same day White had touched her breasts, her vaginal area, and inserted his finger into her "private." As the confrontation between the father and the defendant continued, the father's girlfriend took all of the children to a neighbor's apartment and called the police. After an investigation, the police told the girlfriend to take the alleged victims to the hospital for a physical examination, which she did.

White was charged in the Superior Court with sexual assault. The complaining witnesses, then aged twelve and eight, testified that White had sexually assaulted them. White moved in limine to introduce evidence, through cross-examination, intended to show that both complaining witnesses had previously made false accusations of sexual assault against other persons. White sought to introduce evidence that the two complaining witnesses had previously accused a neighbor of sexual assault. White

4

further sought to introduce evidence that the twelve-year-old had falsely accused two other persons of sexual assault. After a hearing on the motion in limine, the trial court denied White's motion, finding that White had failed to show that the prior allegations were "demonstrably false." The trial court prohibited all cross examination concerning the prior allegations of sexual assault. White was convicted of aggravated felonious sexual assault against the older child and one count of felonious sexual assault against each child.

II. Procedural History

White appealed his convictions to the NHSC. In his appeal, White argued that trial court erred in excluding evidence of the complaining witnesses' prior allegations of sexual assault against other persons. White challenged the trial court's ruling under state and federal law. The NHSC held that the trial court acted within its discretion in excluding White's proffered evidence, and that the court had applied the correct standard under New Hampshire evidentiary law when it required White to show that the prior accusations of sexual assault were "demonstrably false," before they could be inquired into on cross-examination. Id. at 547-51, 765 A.2d at 159-61. The court

5

ruled that White had not shown that the prior allegations were "demonstrable false" because he had not demonstrated "clearly and convincingly" to the trial court that the accusations were false. State v. White, 145 N.H. 544, 553-54, 765 A.2d 156, 163. The standard employed by the NHSC was first announced in White's case. The court's ruling was based on Rule 608(b) of the New Hampshire Rules of Evidence.[2] See White, 145 N.H. at 547, 765 A.2d at 158. The court stated that it did not undertake a separate federal analysis "[b]ecause federal law does not provide any additional protection in this area." White, 145 N.H. at 553-54, 765 A.2d 163, citing State v. Ellsworth, 142 N.H. 710, 720, 790 A.2d 768 (1998) and Clinebell v. Commonwealth, 235 Va. 319, 368 S.E.2d 263 (1988). White filed a petition in the Supreme

---

[2]The text of Rule 608(b) of the New Hampshire Rules of Evidence tracks the language used in the federal rules of evidence. The rule provides in relevant part that:

> Specific instances of conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, . . . .

N.H. R. Evid. 608(b).

6

Court of the United States for a writ of certiorari, but the petition was denied.  <u>White v. New Hampshire</u>, 533 U.S. 932 (2000).

On September 11, 2001, White was sentenced in the Superior Court to serve three consecutive sentences of 10 to 30 years in the NHSP.  The Superior Court's Sentence Review Division affirmed that sentence on April 23, 2002.  White will not be eligible for parole until he has served at least 30 years in prison.

Standard of Review

Summary judgment may be granted in a habeas proceeding when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Monroe v. Coplan</u>, No. Civ. 02-069-B, 2002 WL 31689343 (D.N.H. Nov. 22, 2002); <u>Marro v. Cunningham</u>, No. 97-652-JD, 2000 WL 1466114 (D.N.H. Jan 21, 2000).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the

7

suit.  <u>See</u> <u>id.</u> at 248.

White's habeas petition was filed after the passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Under the AEDPA, the federal courts may not grant a state prisoner a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2002).  With respect to factual issues, the AEDPA mandates that a state court's findings "shall be presumed to be correct" and the petitioner bears the burden of disproving factual findings by "clear and convincing evidence." 28 U.S.C. § 2254(e); <u>DiBenedetto v. Hall</u>, 272 F.3d 1, 6 (1st Cir. 2001).  This presumption of correctness in favor of the state court's factual findings "overrides the ordinary rule that, in summary judgment proceedings, all disputed facts must be construed in the light most favorable to the nonmoving party." <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002).

8

A threshold issue that must be determined is whether White's federal constitutional claim was "adjudicated on the merits" in the state court proceedings within the meaning of 28 U.S.C. § 2254(d). The NHSC found that the trial court applied the proper evidentiary standard applicable to prior false allegations under Rule 608(b) of the New Hampshire Rules of Evidence. The NHSC expressly stated that it did not undertake a separate federal analysis of the Petitioner's Sixth Amendment claim finding, without any supporting analysis, that federal law does not provide any additional protection in this area. Id. at 554, 765 A.2d at 163. The NHSC appeared to cite its decision in State v. Ellsworth, 142 N.H. at 719-20, 709 A.2d at 774 and the Supreme Court of Virginia's decision in Clinebell v. Commonwealth, 368 S.E.2d at 266, as support for its conclusion.

There is support for the proposition that a federal habeas court may find that the state court adjudicated a petitioner's federal claim on the merits if the state court decides the issue by reference to state court decisions that deal with the federal issues. See Dibenedetto v. Hall, 272 F.3d at 6. Similar to the instant case, however, the NHSC concluded in State v. Ellsworth, also without undertaking a separate federal analysis, that

9

federal law provides no additional protection in this area.  See 142 N.H. at 719-20, 709 A.2d at 774.  In Clinebell, the other case seemingly cited by the NHSC as support in White, the Supreme Court of Virginia found that the Sixth Amendment's Confrontation Clause required allowing a defendant to cross-examine a complaining witness about a prior false accusation if the court makes a threshold determination that a reasonable probability of falsity exists.  368 S.E.2d at 266.  While the NHSC found that White could meet the "reasonable probability of falsity" standard, White, 145 N.H. at 551, 765 A.2d at 161, the NHSC did not use the standard that Clinebell found constitutionally mandated choosing instead to rely on its New Hampshire evidentiary rule requiring the defendant to show "clearly and convincingly" to the trial court that a prior accusation was false before permitting the defendant any cross-examination about those prior accusations.  Id. at 548, 765 A.2d at 159.

In light of the NHSC's express decision not to undertake a separate federal analysis of White's federal claim, and the NHSC's apparent reliance on state authorities that do not support its perfunctory dismissal of analysis of federal law, this Court finds that White's federal constitutional claim was not

adjudicated on the merits in the state court.  Cf. Ylst v.

Nunnemaker, 501 U.S. 797, 802-03 (1991) (recognizing that when a

state court issues "an unexplained order (by which we mean an

order whose text or accompanying decision does not disclose the

reason for the judgment) . . . [a]ttributing a reason is both . .

. difficult and artificial); see also, Brittany Glidden, When the

State is Silent: An Analysis of AEDPA's Adjudication Requirement,

27 N.Y.U. Rev. L. & Soc. Change 177, 208-10 (2001-2002) (arguing

that Congress intended to preserve a defendant's right to one

full adjudication of a federal constitutional claim when it

passed the AEDPA).  Since this Court finds that there was no

adjudication of White's federal claim in the state court

proceedings to which this Court should defer, under First Circuit

precedent this Court is required to give White's federal

constitutional claim de novo review.  See Fryar v. Bissonnette,

318 F.3d 339 (1st Cir. 2003); DiBenedetto, 272 F.3d at 6; Fortini

v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).[3]  The Supreme Court's

decision in Early v. Packer, 537 U.S. 3, --, 123 S. Ct. 362, 365

---

[3]Notwithstanding this Court's finding that White's federal constitutional claim was not adjudicated on the merits in the state courts, the Court presumes that the state court's factual determinations were correct and applies them in consideration of White's federal claim.  See DiBenedetto, 272 F.3d at 7, n.1.

11

(2002), does not require a contrary conclusion.  See Ellsworth v. Warden, N.H. State Prison, -- F.3d --, 2003 WL 21374024 at * 2 n.1 (Early stands only for the proposition that deference does not depend on the state court citing federal case law).

As this Court has found that the state courts did not adjudicate White's federal constitutional claim on the merits, because it failed to explain how it reached its conclusion or cite any authority that supports it, the Court applies the pre-AEDPA standard of habeas review.  See Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001) (assuming arguendo that the petitioner's constitutional claim was not adjudicated on the merits and applying the pre-AEDPA standard or review).  "Before 1996, this Court held that a federal court entertaining a state prisoner's application for habeas relief must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact)."  Williams v. Taylor, 529 U.S. 362,  400 (2000).  Accordingly, this Court exercises its independent judgment in considering the merits of White's federal constitutional claim.

12

<u>Discussion</u>

I.   <u>Constitutional Right to Confront Witnesses</u>

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.  The Sixth Amendment right to confront witnesses is a fundamental right secured for defendants in state and federal criminal proceedings.  <u>Smith v. Illinois</u>, 390 U.S. 129, 129 (1968); <u>Pointer v. Texas</u>, 380 U.S. 400, 403 (1965).  A primary interest secured by the Confrontation Clause is the right of the accused to cross-examine adverse witnesses.  <u>Douglas v. Alabama</u>, 380 U.S. 415, 418 (1965); <u>Pointer</u>, 380 U.S. at 405.  The right of cross-examination is a "functional" right designed to promote reliability in the truth-finding functions of a criminal trial.  <u>Kentucky v. Stincer</u>, 482 U.S. 730, 736 (1987); <u>see also</u>, <u>Pointer</u>, 380 U.S. at 405 ("certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case").

Despite the central importance of a defendant's right of cross-examination of adverse witnesses, the Supreme Court has

found that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). The Court has stated generally that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original). Still, Supreme Court precedent makes clear that a criminal defendant retains the right to conduct reasonable cross-examination under the Sixth Amendment. Olden v. Kentucky, 488 U.S. 227, 231 (1988). The Court has found that a Confrontation Clause issue is presented when a defendant alleges that cross-examination restrictions imposed by law or by the trial court "effectively emasculate the right of cross-examination itself." Smith v. Illinois, 390 U.S. at 131; Kentucky v. Stincer, 482 U.S. at 737; Delaware v. Fensterer, 474 U.S. at 18. The instant case requires the Court to determine whether the New Hampshire state courts imposed an

14

unreasonable restriction on White's right to cross-examination.

II. <u>Distinction Between General Attacks on Credibility and</u>
<u>Attacks Directed Toward Revealing Possible Biases,</u>
<u>Prejudices or Ulterior Motives</u>

The Respondent contends that while cross-examination directed towards exposing a witness' possible bias or motive is constitutionally protected, cross-examination intended merely as a general attack on the witness' credibility is not. Respondent argues that in the instant case White merely intended to cross-examine the complaining witnesses pertaining to their prior allegations of sexual assault to attack their credibility generally, and thus the Confrontation Clause was not implicated. According to the Respondent, "[n]o matter how clear it is that a complainant made prior false accusations, the Sixth Amendment does not require that evidence of this fact be admitted, unless the evidence is probative of a material issue such as bias or motive." Mem. in Support of Mot. for Summ. J. at 6.

In his objection, White contends that his accusers' pattern of similar false allegations about the very type of offense that they have accused him of committing supports an inference that the accusers had "some motive to lie." <u>See</u> Pet. Resp. to Mot. for Summ. J. at 4. White further contends that since the

probative value of evidence that a complaining witness has falsely accused others of committing offenses similar to the offense that the defendant is accused of committing clearly exceeds the probative value of more generic instances of dishonesty.  Id. at 7.

The distinction between cross-examination to attack a witness' credibility generally and cross-examination as a particular attack on a witness' credibility was discussed in Davis v. Alaska, 415 U.S. 308 (1974).  There, the Supreme Court found that a general attack on credibility, as through introduction of evidence of a prior conviction, intends to provide the jury with "a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony."  Id. at 316.  In contrast, the Court found that a defendant may make a particular attack on a witness' credibility through "cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to the issues or personalities in the case at hand."  Id.  The Court subsequently stated in a later case that "a criminal defendant states a violation of the Confrontation Clause

16

by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." Delaware v. Van Arsdall, 475 U.S. at 680, quoting Davis, 415 U.S. at 318.

The parties have not identified any case, and this Court is not aware of any, where the Supreme Court has found that a defendant's constitutional right to cross-examine witnesses requires the introduction of evidence intended to impeach a witness' general credibility. This Court finds, exercising its independent judgment, that the Supreme Court's Confrontation Clause jurisprudence, emphasizing the fundamental role of cross-examination in assuring the reliability of fact finding, reasonably extends to cross-examination of adverse witnesses about a pattern of allegedly false accusations against others of the type of offense of which the defendant is accused. See e.g., Pointer, 380 U.S. at 405 ("There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of

17

confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal"); Smith, 390 U.S. at 131 ("we have repeatedly stated that '[a] denial of cross-examination without waiver . . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'"); California v. Green, 399 U.S. 149, 158 (1970)(recognizing that cross-examination is the "'greatest legal engine ever invented for the discovery of truth.'"); Chambers v. Mississippi, 410 U.S. 284, 295 (1973) (finding that "[t]he right of cross-examination is more than a desirable rule of trial procedure," rather "[i]t is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determination process.'"); Kentucky v. Stincer, 482 U.S. at 736 ("The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process.").

In Davis v. Alaska, the Supreme Court found that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." 415 U.S. at 316. The Court continued, "[s]ubject always to the broad

discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness." Id. (emphasis added). Contrary to the Respondent's contention, the Davis Court did not state a bright line rule that a criminal defendant has no protection under the Sixth Amendment for cross-examination intended to attack a witness' credibility generally. Rather, the Court held, under the facts of that case, that the defendant's Sixth Amendment rights had been violated because the trial court denied the defendant an opportunity to show the existence of a bias on the part of an adverse witness, which could have affected the accuracy and truthfulness of his testimony. See Davis, 415 U.S. at 317-18. It is the opinion of this Court that the Supreme Court has reserved judgment on the extent of constitutional protection of cross-examination intended to impeach a witness' general credibility.[4]

---

[4]The Court recognizes that there are decisions from other federal circuits courts that have found that there is a dividing line between constitutionally required cross-examination to expose the witnesses' bias, prejudice or motive and cross-examination intended as a general attack on the witness'

19

This Court finds that Justice Stewart's concurrence in Davis, emphasizing that "the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions," see Davis, 415 U.S. at 321, does not foreclose White's federal constitutional claim for two reasons. First, Justice Stewart's concurrence was not the opinion of the Court. Second, it is plain that the type of evidence Justice Stewart discussed -- cross-examination about past delinquency adjudications or criminal convictions to impeach the general credibility of a witness -- is not necessarily of the same probative value as cross-examination of a complaining witness pertaining to a pattern of false accusations against others of similar offenses. Where, as here, the defendant has evidence that a complaining witness has engaged in a pattern of making similar allegations against others, and where the state court has

_____

credibility. See e.g., Redmond v. Kingston, 240 F.3d 590, 593 (7th Cir. 2001); Quinn v. Haynes, 234 F.3d 837, 845 (4th Cir. 2000), Boggs v. Collins, 226 F.3d 728, 739-40 (6th Cir. 2000), United States v. Bartlett, 856 F.2d 1071, 1087-89 (8th Cir. 1988); Hughes v Raines, 641 F.2d 790, 793 (9th Cir. 1981). However, none of those cases involved an alleged pattern of prior false allegations of similar offenses against others.

20

found that the defendant has shown that those prior allegations were false to a reasonable probability, it strains reason to suggest that such evidence is not probative of whether the testimony of the complaining witness is credible.

Notwithstanding the open issue of law of constitutional protection of cross-examination intended to attack a witness' general credibility, here White argues that a pattern of prior false allegations by the complaining witnesses may be indicative of some motive to testify falsely. Viewed as such, White's federal constitutional claim may be reconciled with the Supreme Court's existing cases. And while White has not articulated a particular motive theory, that should not be a rigid bar to cross-examination. See Burr v. Sullivan, 618 F.2d 583, 587 (9th Cir. 1980) (rejecting the argument that the defense is required to articulate a precise theory of bias before being permitted to cross-examine witnesses about earlier criminal proceedings); see also, Alford v. United States, 282 U.S. 687, 692 (1931) (finding that cross-examination "is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general apply"). The NHSC recognized the potential of White's evidence to expose the complaining witness' motive to

21

testify false. Indeed, the NHSC found in its opinion that "the prior allegations of sexual assault are not probative of the victims' motives because . . . the defendant has failed to demonstrate clearly and unconvincingly that the prior allegations are false." White, 145 N.H. at 554-54, 765 A.2d at 163. Had White been allowed a reasonable opportunity to explore the prior allegations of sexual assault a specific motive might have become readily apparent. The evidence of a pattern of prior allegations of similar offense surely could have affected the jury's perception of the reliability of the complaining witnesses. See Davis, 415 U.S. at 318 ("defense counsel should have been permitted to expose to the jury the facts from which, the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness").

While it may have been appropriate for the trial court to prohibit White from introducing extrinsic evidence to impeach the complaining witnesses, White should have been permitted to expose to the jury, through cross-examination about the prior allegations of sexual assault, evidence which may have severely undermined the complaining witnesses' credibility. See United States v. Abel, 469 U.S. 45, 52 (1984) ("The 'common law of

22

evidence' allowed the showing of bias by extrinsic evidence, while requiring the cross-examiner to 'take the answer of the witness' with respect to less favored forms of impeachment."); see also, Montana v. Egelhoff, 518 U.S. 37, 43-44 (1996) (a state evidentiary rule violates the due process clause if it offends a fundamental principle of justice developed under the common law). It appears to this Court that this is an extreme case where the state court's restriction on the defendant's right to cross-examination was manifestly unreasonable and overbroad. See United States v. Gomes, 177 F.3d 76, 81-82 (1st Cir. 1999) (finding that claims of evidentiary error under the Confrontation Clause are only tenable where the restriction is manifestly unreasonable or overbroad).

The First Circuit's en banc opinion in Ellsworth, although not directly controlling, supports the validity of White's federal constitutional claim. In Ellsworth, a case where the defendant was charged with sexually assaulting a minor, the First Circuit found that the defendant raised a viable claim under Brady v. Maryland, 373 U.S. 83 (1963), where the prosecution failed to turn over a youth center intake note suggesting that the complaining witness had made false accusations of sexual

23

abuse against his caretakers in the past. <u>Ellsworth</u>, 2003 WL 21374024 at *3. The First Circuit found that the document, although not itself admissible, was exculpatory. <u>Id.</u> The court found that document could have led the defendant to persons who could testify as to the circumstances of the allegations and the basis for believing them to be false. <u>Id.</u> The court found that,

> If strong evidence of a prior false accusation exists, it would be very powerful. The setting and type of alleged lie are similar, so this evidence would be far more potent than a random unrelated episode of untruthfulness by [the complaining witness] . . . . Coupled with [proof of the complaining witness' instability], evidence that the [complaining witness] had falsely accused caretakers before could easily have created the reasonable doubt necessary to acquit Ellsworth in what was otherwise largely a credibility contest.

<u>Id.</u> at *4. The court declined to resolve whether the New Hampshire standard for admission of evidence of a complaining witness' prior false accusations, that the allegations be "clearly and convincing" false, is unconstitutional. <u>Id.</u> at *5.

Under our system of criminal justice the prosecution bears the burden of proof not the defendant. <u>In re Winship</u>, 397 U.S. 358, 364 (1970). An evidentiary rule that requires a defendant to demonstrate to the trial court "clearly and convincingly" that a complaining witness made prior false accusations of a similar

24

offense before the defendant may have any opportunity to cross-examine the complaining witness about those prior accusations creates an unduly high barrier against the defendant's presentation of probative evidence.[5] The nature of the evidentiary burden imposed here is particularly onerous where the defendant has evidence that the complaining witness has made multiple prior accusations of similar offenses and the state court has found those accusations false to a reasonable probability. The finder of fact must be entrusted to be able to determine the credibility of the complaining witness under such circumstances. The stated purpose behind New Hampshire's evidentiary rule, namely preventing a "trial within a trial," see White, 145 N.H. at 548, 765 A.2d at 159, is disproportionate to the purpose that it is intended to serve as the trial court could have constrained White's presentation of evidence to the complaining witnesses' testimony. Because New Hampshire's exclusionary rule is disproportionate to its intended purpose, it violates the defendant's constitutional rights. See United

---

[5]In a somewhat analogous context, the Supreme Court found that a state law requiring a criminal defendant to stand trial unless he proves to the trial court by clear and convincing evidence that he is incompetent violated the due process clause. Cooper v. Oklahoma, 517 U.S. 348, 368-69 (1996).

25

States v. Scheffer, 523 U.S. 303, 308 (1998); Michigan v. Lucas, 500 U.S. 145, 151 (1991); Rock v. Arkansas, 483 U.S. 44, 55-56 (1987).

In light of the foregoing, this Court finds that where White presented evidence that the complaining witnesses engaged in a pattern of making false allegations of similar offenses against others, and where the state court found that White demonstrated the falsity of those prior allegations to a reasonable probability, it was unreasonable under the Sixth Amendment for the state court to deny White any opportunity to cross-examine the complaining witnesses regarding those prior accusations at his criminal trial. Therefore, the Respondent's motion for summary judgment is denied. The Court further finds that the state court's constitutional error was not harmless because there is no dispute that the testimony of the complaining witnesses was critical to the prosecution's case, and because the evidence sought to be introduced would not have been cumulative. See Van Arsdall, 475 U.S. at 648 (finding that constitutional challenges pertaining to the improper denial of a defendant's opportunity to impeach a witness for bias is subject to harmless error analysis). Therefore, the Court grants White's petition for a

26

writ of habeas corpus.

Conclusion

For the reasons set forth above, Respondent's motion for summary judgment (document no. 6) is denied.  The petition for a writ of habeas corpus (document no. 1) is granted.  The Respondent is ordered to release White unless the state vacates his convictions and affords him a new trial within 90 days.


**SO ORDERED.**


                               _____
                               James R. Muirhead
                               United States Magistrate Judge

Date:     July 11, 2003


cc:       David M. Rothstein, Esq.
          Nicholas Cort, Esq.