Belknap
No. 99-315

THE STATE OF NEW HAMPSHIRE

v.

RICHARD DOUTHART

May 21, 2001

*Philip T. McLaughlin*, attorney general (*Malinda R. Lawrence*, assistant attorney general, on the brief and orally), for the State.

*Jenifer Bensinger Ackerman*, assistant appellate defender, of Concord, and *Carl Olson*, assistant appellate defender, of Littleton (*Ms. Ackerman* on the brief, and *Mr. Olson* orally), for the defendant.

NADEAU, J. The defendant, Richard Douthart, appeals from his convictions following a jury trial in the Superior Court (*Perkins*, J.) for one count of first-degree murder and one count of conspiracy to commit robbery. *See* RSA 630:1-a (1996); RSA 629:3 (1996) (amended 1999); RSA 636:1 (1996). The defendant contends that the court erred by: (1) excluding evidence regarding a State witness's prior bad acts; and (2) admitting the defendant's inculpatory out-of-court statements, but excluding exculpatory statements made to the same witness on the same subject. We affirm.

The relevant facts follow. On August 3, 1998, the victim, a fourteen-year-old boy, was found dead on the banks of the Winnipesaukee River. The Tuesday following the murder, Jon Knowles gave a statement to the Concord police. He admitted that he and the defendant had planned an impromptu robbery of the victim, and that the defendant had committed the murder in the course of the robbery. Thereafter, the defendant was arrested and gave his own statement to the police, stating he alone caused the victim's fatal injuries. The defendant initially omitted any reference to Knowles. He implicated him only after the police indicated they knew of Knowles' participation. The defendant, however, did not accuse Knowles of causing the fatal injuries. Knowles later testified for the State.

Prior to trial, the defendant moved to admit evidence that Knowles, in the past, had: (1) shot at people three or more times and believes he has wounded at least one person; (2) stabbed three or four people; (3) badly beaten a sick and deformed child; (4) engaged in numerous thefts of bicycles, alcohol, cigarettes, guns and car stereos; (5) frequently used alcohol and marijuana; (6) lied to authorities such as police, teachers and employers; and (7) had frequent contact with the Concord police regarding assault allegations.

The trial court admitted evidence regarding prior thefts and incidents of lying to authorities, reasoning that New Hampshire Rule of Evidence 608(b) permits this evidence because it impeaches the witness's credibility. The trial court also admitted evidence regarding Knowles' intoxication at the time of the murder. The remainder of the "bad acts" evidence, however, was excluded pursuant to New Hampshire Rules of Evidence 404(b) and 403. The defendant contends this was error.

At trial, the State offered testimony that on the evening of the murder, the defendant made statements to his then-girlfriend, Danielle Bixby, that he had killed someone earlier that day after being jumped by four people. The State also offered statements that during the ensuing two days he made further inculpatory statements regarding specific injuries that he had inflicted upon the victim. In anticipation of this testimony, prior to trial, the defendant moved to introduce alleged exculpatory statements that he made after his arrest, in which he told Bixby that Knowles had committed the murder.

Generally, "[t]he admissibility of evidence is a matter within the trial court's broad discretion, and we will not upset the court's ruling absent an abuse of that discretion. To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Warren*, 143 N.H. 633, 636 (1999) (quotation and citation omitted); *see State v. Ellsworth*, 142 N.H. 710, 716 (1998). "The proponent of bad acts evidence . . . bears the burden of demonstrating its relevance." *State v. Glodgett*, 144 N.H. 687, 690 (2000) (quotations omitted).

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As a threshold issue, when a defendant seeks to introduce prior bad acts of another to impugn the State's case, the defendant must demonstrate such "evidence of other bad acts is relevant for a purpose other than to prove the [witness's] character or disposition." *State v. Monroe*, 142 N.H. 857, 871 (1998). "To meet the relevancy requirement of Rule 404(b), there must be a clear

connection between the particular evidentiary purpose and the other bad acts." *Id.* (quotation and ellipsis omitted).

■ The defendant argues that Knowles' bad acts are relevant because of his "fear of becoming the focus of a murder investigation and the risk of receiving a severe punishment due to his prior bad acts." The defendant contends this fear, combined with Knowles' wish to receive a lenient sentence, motivated him to go to the police and implicate the defendant. The defendant further argues that without the bad acts evidence, "the jury was free to believe that Knowles was motivated by his conscience."

The defendant offered insufficient testimony to counter the State's position that most of the prior bad acts proffered by the defendant were committed by Knowles while he was a minor in Colorado, and were largely unknown to the New Hampshire authorities when the homicide investigation began. Given that law enforcement officers were unaware of Knowles' prior bad acts, and he had no reason to believe that they were, there is simply no nexus between those bad acts and Knowles' motivation to report the crime to the police. The defendant's theory is speculative at best. The proffered evidence is, therefore, irrelevant.

The defendant next argues after the court admitted certain inculpatory statements he made to Bixby, the exclusion of his subsequent exculpatory statements to her was error under the doctrine of completeness.

■ "Under the doctrine of verbal completeness, a party has the right to introduce the remainder of a writing, statement, correspondence, former testimony, or conversation that his or her opponent introduced so far as it relates to the same subject matter and hence tends to explain or shed light on the meaning of the part already received." *Warren,* 143 N.H. at 636 (quotation and brackets omitted). This doctrine exists to prevent one party from gaining an advantage by misleading the jury. *See id.* Thus, there are two requirements to trigger the doctrine respecting conversations: first, the statements must be part of the same conversation; and second, admission of only a portion would mislead the jury.

The defendant argues that both the inculpatory and exculpatory statements are part of an "on-going dialogue" between him and Bixby, and therefore once the inculpatory statements were admitted, the exculpatory statements were required in the interest of completeness. The State counters that the statements are remote in time and cannot be considered part of the same statement. We agree. The defendant's statements made prior to arrest and those

made after the arrest simply are not part of the same conversation. The doctrine of completeness would be strained if we adopted the defendant's "on-going dialogue" theory.

The defendant argues that admitting only the inculpatory statements misled the jury because "the jury was left to believe that as Bixby was the only person that [the defendant] confided in prior to his contact with the police, he would have told her that Knowles was the murderer if in fact he was." The State argues that the exculpatory statements would not help explain the initial statements because they took place under entirely different circumstances after the defendant had been arrested and charged with murder in the interim, and because the statements are self-serving. We agree with the State, and, accordingly, affirm.

*Affirmed.*

BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred.