Strafford
No. 2003-354

THE STATE OF NEW HAMPSHIRE

v.

RICHARD ELLSWORTH

Argued: March 10, 2004
Opinion Issued: June 25, 2004

*Peter W. Heed,* attorney general (*Elizabeth A. Dunn,* assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Richard Ellsworth, was convicted after a jury trial in Superior Court (*Mohl,* J.) on one count of aggravated felonious sexual assault, *see* RSA 632-A:2, II (Supp. 2003), and three counts of felonious sexual assault, *see* RSA 632-A:3, III (1996). On appeal, he argues that the trial court erred when it: (1) denied his motion for a mistrial after the prosecutor made unfairly prejudicial statements during closing argument; and (2) excluded a statement in which he denied assaulting the victim. We reverse and remand.

The jury could have found the following facts. In February 2002, the defendant hired Tim Meserve to help him build a house on land that the defendant owned in Barrington. At that time, Meserve lived with his fiancée and her two daughters. On March 1, 2002, the defendant asked the victim, the twelve-year-old daughter of Meserve's fiancée, to stay overnight in a small trailer at the Barrington site. The defendant told the victim that he needed her to babysit his five-year-old son, Patrick. The victim agreed and accompanied the defendant, Meserve and Patrick to the Barrington site, where she watched Patrick while the defendant and Meserve worked.

At approximately 11:30 p.m., the defendant and Meserve finished working. They returned to the trailer and began watching a video with the children. Soon after the video started, Meserve fell asleep on the floor. The defendant, Patrick and the victim watched the video on a pull-out couch. The victim fell asleep while the video was still on. At trial, she testified that she was lying on the edge of the couch with her back against the wall of the trailer. Patrick slept beside her and the defendant slept on the other side of Patrick.

The victim testified that she awoke during the night and felt the defendant's foot rubbing her vaginal area over her clothes. She further

testified that after five to ten minutes, the defendant stopped rubbing her vaginal area and used his foot to rub her breasts over her sweatshirt. The defendant then sat up, pushed the victim's sweatshirt and bra up, and touched her breast with his hand. After a few minutes, the defendant lay back down and used his foot to rub her breast and buttocks.

The defendant was subsequently indicted on one count of aggravated felonious sexual assault and three counts of felonious sexual assault. After a jury trial in January 2003, he was convicted on all counts. The defendant was sentenced to ten to twenty years in the New Hampshire State Prison on the aggravated felonious sexual assault conviction, a two-and-one-half to five year consecutive term on one felonious sexual assault conviction, and suspended consecutive terms on the two remaining felonious sexual assault convictions. This appeal followed.

The defendant first argues that because the prosecutor made unfairly prejudicial statements during closing argument, the trial court erred in denying his motion for a mistrial. The defendant additionally contends that the corrective measures taken by the trial court in response to the prosecutor's comments were inadequate and, therefore, "vindication of [his] rights to due process and a fair trial and his privilege against self-incrimination, protected by Part I, Article 15 of the New Hampshire Constitution, and the Fifth and Fourteenth Amendments to the [F]ederal [C]onstitution, require this [c]ourt to reverse the convictions." We agree.

█ "Mistrial is the proper remedy only if the evidence or comment complained of was not merely improper, but also so prejudicial that it constitutes an irreparable injustice that cannot be cured by jury instructions." *State v. Boetti*, 142 N.H. 255, 261 (1997) (quotation omitted). The trial court is in the best position to determine what remedy will adequately correct the prejudice created by a prosecutor's remarks, and absent an unsustainable exercise of discretion, we will not overturn its decision. *Id.; cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

We first address the defendant's arguments relying upon the New Hampshire Constitution and reference federal cases only to aid in our analysis. *See State v. Haines*, 142 N.H. 692, 701 (1998); *see also State v. Ball*, 124 N.H. 226, 232 (1983).

█ It is well-settled that "[i]mproper argument, while objectionable in any case, is especially troublesome when made by a prosecutor, as the prosecutor is likely to be seen by the jury as an authority figure whose opinion carries considerable weight." *Boetti*, 142 N.H. at 260 (quotation omitted). We recognize that prosecutors may, and should, "present their

cases to criminal juries zealously." *United States v. Taylor*, 54 F.3d 967, 976 (1st Cir. 1995).

> Yet, while a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." This maxim is particularly relevant to closing arguments, for such arguments come at an especially delicate point in the trial process and represent the parties' last, best chance to marshal the evidence and persuade the jurors of its import.

*Id.* at 977.

■ It is equally well-settled that a defendant's decision not to testify or present evidence in his own defense can provide no basis for an adverse comment by the prosecutor. *State v. Fowler*, 132 N.H. 540, 545 (1989). Comment either by a prosecutor or the court which may be construed as an unfavorable reference to the failure of a defendant to testify is a violation of the defendant's constitutional right against self-incrimination. *State v. Fowler*, 110 N.H. 110, 112 (1970).

■ As a threshold matter, we must determine whether the prosecutor's remark amounted to an impermissible comment upon the defendant's decision not to testify. *United States v. Rodriguez*, 215 F.3d 110, 122 (1st Cir. 2000), *cert. denied*, 532 U.S. 996 (2001). If the prosecutor's remark was impermissible, we must then establish whether the error requires reversal of the verdict. *Id.* In doing so, we balance the following factors: "(1) whether the prosecutor's misconduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case." *Id.* (quotation omitted); *see also State v. Turgeon*, 137 N.H. 544, 547-48 (1993) (applying three factors in case where defendant claimed prosecutor's comments about his failure to testify violated his Sixth Amendment right to a fair trial under the Federal Constitution).

In the present case, during closing argument, the prosecutor stated:

> Now, don't be intimidated by the constant suggestion that somehow [the victim] has to come forward and explain exactly how the defendant touched her private parts. I mean, there's one person that knows exactly how he made his foot go and touch [the victim's] private parts. That is [the defendant]. It is not [the victim's] job to try and explain it to you.

Defense counsel immediately moved for a mistrial. The trial court denied the motion and, instead, directed the prosecutor to explain his remarks to

the jury. Thus, following a bench conference, the prosecutor told the jury: "I'm not suggesting that the defendant has an obligation to explain himself; he doesn't. Our constitution guarantees him the right not to testify, and the judge is gonna give you that instruction at the end of the trial."

Later, when the court charged the jury, it said:

> The defendant has an absolute right not to take the witness stand to testify. The fact that the defendant did not testify in this case may not be considered by you in any way in deciding the case. The [S]tate has the burden of proving guilt beyond a reasonable doubt. The defendant has no obligation to present evidence or to prove that he is innocent.

We must first determine whether the prosecutor's remark amounted to an impermissible comment on the defendant's decision not to testify. *Rodriguez*, 215 F.3d at 122. The State argues that our decision is controlled by *United States v. Robinson*, 485 U.S. 25 (1988). In *Robinson*, defense counsel in closing argument said that "the Government had unfairly denied [the defendant] the opportunity to explain his actions." *Robinson*, 485 U.S. at 27. The prosecutor responded by telling the jury that the defendant could have taken the stand and explained himself. *Id.* at 28. The United States Supreme Court held "that the prosecutor's statement that [the defendant] could have explained to the jury his story did not in the light of the comments by defense counsel infringe upon [the defendant's] Fifth Amendment rights." *Id.* at 31. In reaching this conclusion, the court reasoned that the prosecutor's statement was a "fair response" to defense counsel's claim that the government did not give the defendant the opportunity to explain himself. *Id.* at 32.

The State argues that like the prosecutor's comment in *Robinson*, the prosecutor's comment in this case was permissible because it was a fair response to defense counsel's claim that the prosecution did not adequately investigate the victim's allegations. We disagree and find this case distinguishable from *Robinson*.

Here, in his closing argument, defense counsel criticized the State's investigation of the victim's allegations and stated:

> Ladies and gentlemen of the jury, this is an American courtroom, an American court of justice. What is expected? And by that, what investigation was done in this case? Nothing. Absolutely nothing. Detective Banaian did nothing. The prosecution did nothing. What they did was they took a statement and that was it. Absolutely.

Defense counsel did not comment on the defendant's failure to testify. Nor did defense counsel imply, as defense counsel did in *Robinson*, that the State had prevented the defendant from testifying. Accordingly, we reject the State's argument that our decision is controlled by *Robinson* and conclude that the prosecutor's remark was impermissible.

We must now determine whether the prosecutor's remark requires reversal of the verdict below. *Rodriguez*, 215 F.3d at 122. In making this determination, we balance the three factors set forth above.

As to the first factor, whether the misconduct was isolated and/or deliberate, we conclude that although isolated, the prosecutor's remark was nonetheless deliberate. After he told the jury that the defendant was the only person who could explain how he assaulted the victim, the prosecutor did not admit to making a mistake or express any regret. Instead, at a bench conference immediately following the comment, the prosecutor tried to justify his actions by stating that it was unfair to ask the victim to explain "what only the defendant can know." Therefore, we conclude that the prosecutor's impermissible comment about the defendant's failure to testify was a conscious decision, as opposed to a mere slip of the tongue.

The next factor, whether the trial court gave a strong and explicit cautionary instruction, weighs heavily in favor of the defendant. We have previously recognized that under federal law, an immediate curative instruction can adequately remedy improper prosecutorial commentary. *See Turgeon*, 137 N.H. at 548. In this case, after the prosecutor impermissibly commented on the defendant's failure to testify, the trial court required him to tell the jury that he was not suggesting that the defendant had an obligation to explain himself. Thus, even though the trial court apparently recognized that the prosecutor's statement was impermissible, it gave no immediate curative instruction. Unlike a prosecutor's explanation, a trial court's immediate curative instruction bears the weight of judicial disapproval. Here, instead of hearing the trial court say that the remark was clearly improper, the jury only heard the prosecutor explain and minimize his remark.

We have also taken the later jury charge into account. When it charged the jury, the trial court said that the defendant had an absolute right not to testify. We conclude, however, that this instruction, given long after the prosecutor's impermissible comment, was not enough to outweigh the danger that was created by the court's failure to instruct the jury immediately following the prosecutor's comment.

Third, we consider whether any prejudice survived the court's instruction that likely could have affected the outcome of the case. In analyzing this factor, our previous cases have focused upon the strength of

the evidence against the defendant. *See id.* In the present case, the evidence against the defendant was by no means overwhelming. While the victim provided detailed testimony about the assaults, her testimony was not corroborated. The State's case was, however, strengthened by the victim's testimony that the defendant approached her the day after the assaults and asked her if she was "going to tell anyone."

Defense counsel focused, in large part, upon the implausibility of the victim's testimony. On cross-examination of the victim, defense counsel asked her to describe the sleeping arrangements on the night of the assaults. The victim testified that she was curled up on one end of a three foot by six foot couch with Patrick on one side of her and the defendant on the other side of Patrick. Given this configuration, defense counsel challenged the victim to explain how it was physically possible for the defendant to touch her vagina, breasts and buttocks with his foot.

Defense counsel continued to challenge the plausibility of the victim's allegations when he cross-examined the lead investigator on the case, Lieutenant Jacob Banaian of the Barrington police department. Specifically, defense counsel challenged the adequacy of Banaian's investigation into whether it was physically possible for the assaults to have occurred in the manner alleged by the victim. In closing argument, defense counsel relied upon the testimony he had elicited during cross-examination of the victim and Banaian to argue that the victim's allegations were not credible and Banaian "did nothing" to investigate the allegations.

■ The implausibility of the victim's allegations was defense counsel's strongest argument. To directly counter it, the prosecutor commented upon the defendant's failure to testify. The prosecutor's impermissible comment thus struck at the heart of the defense. On this record, we are convinced that the prejudice created by the prosecutor's comment was not cured by his explanation or the trial court's subsequent instruction.

■ In sum, we conclude that all three factors weigh in favor of the defendant. The prosecutor's comment was deliberate, the trial court did not give a strong and explicit cautionary instruction immediately following the impermissible comment and the strength of the evidence presented against the defendant was insufficient to outweigh the danger of any prejudice that likely could have affected the outcome of the case. Accordingly, we hold that the denial of the defendant's motion for a mistrial was an unsustainable exercise of discretion. Because we reverse on State constitutional grounds, we need not address the defendant's arguments under the Federal Constitution. *See Ball,* 124 N.H. at 232.

The second issue raised on appeal is whether the trial court erred when it excluded a statement the defendant made in which he denied assaulting the victim. Specifically, the defendant contends that because the State introduced a statement in which he admitted to sleeping on the couch with the victim, the trial court was required, under the doctrine of verbal completeness, to allow him to introduce an additional statement that he made during the same conversation in which he denied the allegations against him. Although we have already reversed the defendant's convictions on other grounds, we address this issue because it is likely to arise upon retrial.

The admissibility of evidence is generally within the trial court's sound discretion. *State v. Gamester*, 149 N.H. 475, 478 (2003). We will not reverse the trial court's admission of evidence absent an unsustainable exercise of discretion. *Id.* To show that the trial court's exercise of discretion is unsustainable, the defendant must show that the decision was clearly unreasonable to the prejudice of his case. *Id.*; *cf. Lambert*, 147 N.H. at 296.

 Under the doctrine of verbal completeness, a party has the right to introduce the remainder of a writing, statement, correspondence, former testimony or conversation that his or her opponent introduced so far as it relates to the same subject matter and hence tends to explain or shed light on the meaning of the part already received. *State v. Douthart*, 146 N.H. 445, 448 (2001). This doctrine exists to prevent one party from gaining an advantage by misleading the jury. *Id.* "Thus, there are two requirements to trigger the doctrine respecting conversations: first, the statements must be part of the same conversation; and second, admission of only a portion would mislead the jury." *Id.*

At trial, the prosecutor called Banaian to testify about his investigation of the victim's allegations. On cross-examination, defense counsel questioned the integrity of Banaian's investigation. Defense counsel asked if, given the size of the couch and the position of the three people sleeping on it, Banaian determined whether it was physically possible for the defendant to assault the victim in the manner that she alleged. In response to further defense questioning, Banaian said that as part of his investigation, he spoke with the defendant. The trial court did not, however, allow defense counsel to ask Banaian if the defendant denied assaulting the victim.

On redirect examination, the prosecutor sought to introduce a statement that the defendant made to Banaian in which he admitted to sleeping on the couch with the victim and Patrick. The prosecutor argued that the statement was necessary to rebut defense counsel's inference that it was not physically possible for the assault to have occurred. The prosecutor

also argued that the statement was necessary to rebut the inference that Banaian did not "do anything" to corroborate the victim's allegations. The trial court allowed the prosecutor to introduce the defendant's statement.

On recross-examination, defense counsel once again attempted to introduce the defendant's statement denying the assault. The trial court permitted defense counsel to question Banaian outside of the presence of the jury, but ultimately excluded the defendant's statement. The trial court reasoned that the State was "forced" to introduce the defendant's statement about sleeping on the couch with the victim "because of the way the defense portrayed the situation as to whether or not it was physically possible to have those three persons on the bed during the evening." The court further reasoned that "the limited statement as to whether or not they were on the bed is distinguishable from the remainder of the defendant's statements." The defendant argues that this was error.

We agree with the defendant that the doctrine of verbal completeness was triggered. The defendant made two statements in his interview with Banaian: (1) he admitted sleeping on the couch with the victim; and (2) he denied assaulting the victim. The first prong of the verbal completeness analysis is thus satisfied—both statements were part of the same conversation.

The second prong of the analysis is also satisfied. At trial, the State selectively introduced only one of the two statements. The introduction of the defendant's first statement created an inference that because the defendant slept on the couch with the victim, he also assaulted her. Nevertheless, the defendant was not allowed to introduce the statement in which he denied assaulting the victim. The admission of only one of the defendant's two statements was misleading to the jury. Accordingly, we conclude that the trial court erred when it excluded the statement in which the defendant denied assaulting the victim. Since we have already reversed the defendant's convictions on other grounds, we express no opinion as to whether the trial court's error in excluding one of the defendant's two statements was harmless.

*Reversed and remanded.*

NADEAU and DALIANIS, JJ., concurred; BRODERICK, C.J., with whom GALWAY, J., joined, concurred in part and dissented in part.

BRODERICK, C.J., concurring in part and dissenting in part. I concur in that part of the majority opinion holding that the denial of the defendant's motion for a mistrial, based upon remarks made by the prosecutor during his closing argument, was an unsustainable exercise of discretion.

I write separately, however, because I believe that the majority opinion misapplies the doctrine of verbal completeness. In this case, the prosecutor introduced the defendant's statement that he slept on the couch with his son and the alleged victim to rebut specific inferences, created by defense counsel's cross-examination of Banaian, that: (1) it was not physically possible for the assaults to have occurred in the manner alleged; and (2) Banaian did not "do anything" to corroborate the victim's allegations during his investigation.

Unlike the majority, I do not believe that admitting the defendant's statement regarding the sleeping arrangements, without admitting his denial of guilt, misled the jury. Standing alone, it indicated only that the defendant, his son and the alleged victim did, in fact, sleep on the same couch. There was nothing about the statement that required qualification, explanation, contradiction, or context. The defendant's second statement did not deny that the sleeping arrangements were as his first statement purported them to be. Instead, he denied assaulting the alleged victim. The State, however, had not introduced the first statement to prove that the defendant had assaulted the alleged victim, nor could any rational juror have inferred that from it. Therefore, the defendant's denial was not necessary to clarify the prosecution's contentions that it was physically possible for the assaults to have occurred and that Banaian had corroborated the victim's allegations. *Cf. State v. Warren*, 143 N.H. 633 (1999) (doctrine of verbal completeness required additional evidence to correct false impression); *State v. Crosman*, 125 N.H. 527 (1984) (same).

Circumstances similar to this case were present in *State v. Dixon*, 144 N.H. 273 (1999). In that case, the defendant was indicted on three charges of aggravated felonious sexual assault. *Dixon*, 144 N.H. at 274. The three charges were identical except that each assault allegedly occurred at a different residence. *Id.* at 275. At trial, the State called a police officer, who had interviewed the defendant, to testify regarding the defendant's statements concerning his residences during the time period in which the assaults allegedly occurred. *Id.* at 281. As the defense commenced cross-examination, the State obtained a ruling barring the defense from eliciting testimony that, during the interview, the defendant denied assaulting the victim. *Id.*

On appeal, the defendant argued, under the doctrine of verbal completeness, that he was entitled to cross-examine the officer about his denial of guilt. *Id.* In affirming the defendant's conviction, we held that his denial was unrelated to the information the officer provided regarding the defendant's residences, and that the defendant's statements concerning his residences could not have reasonably given rise to an inference that he admitted guilt. *Id.* at 281-82.

In *Dixon* we recognized that the defendant's denial of wrongdoing was not necessary to provide context to testimony regarding the facts underlying the alleged crime. Similarly, the defendant's denial here does not provide context to his statement that he slept on the couch with his son and the alleged victim. Accordingly, and recognizing the discretion with which the trial court rules on the admissibility of evidence, I do not believe that the trial court erred in excluding the defendant's statement in which he denied assaulting the victim.

GALWAY, J., joins in the opinion of BRODERICK, C.J.