# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0044, <u>State of New Hampshire v. Leslie M. Howe</u>, the court on May 14, 2021, issued the following order:**

Having considered the briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, Leslie M. Howe, appeals his convictions on one count of aggravated felonious sexual assault and two counts of felonious sexual assault. He argues that the Trial Court (<u>Bornstein</u>, J.) erred: (1) by denying defense counsel's motion to strike a portion of the State's closing argument; and (2) by admitting certain statements made by a police officer during the defendant's interrogation. We affirm.

The following evidence was presented to the jury. On July 9, 2017, the defendant drove an older model sports car to a church service. The ten-year-old victim, whose home was two houses away from the church, attended the same church service alone. After the service, the victim asked the defendant whether he could look at the car. The defendant agreed and they went to the church parking lot where the victim entered the driver's seat to examine the car. After a short time, the victim exited the car whereupon the defendant lifted him up off the ground. The defendant touched and rubbed the victim's genitals and buttocks through his clothing before putting him back on the ground. When he returned home, the victim told his grandmother what had happened. His grandmother "struggled" with the disclosure. Two weeks later, she reported the assault to the wife of the church pastor, who then told the pastor. Following this report, the victim was interviewed by the pastor, State Police Trooper Anderson, and a forensic interviewer at the Child Advocacy Center. On each occasion, the victim described the July 9, 2017 assault.

In September 2017, the defendant voluntarily met with Trooper Anderson and Detective Stephens for an interview. He initially claimed that the victim had become panicked while sitting in the sports car and that when he reached into the car to lift him out, the defendant might have inadvertently touched the victim's buttocks and genitals. As the interview continued, the defendant conceded: "I touched him inappropriately."

Based on its investigation, the State charged the defendant with one count of aggravated felonious sexual assault and two counts of felonious sexual assault. The State's witnesses at trial included the victim, his pastor, his grandmother, Trooper Anderson, and Detective Stephens. When the State sought to introduce excerpts from the defendant's September interview with the State Police, defense counsel moved to strike several portions. The trial court

reviewed with counsel the challenged portions of the interview and ruled on approximately 25 excerpts, granting approximately half of the defendant's requests.

Following a jury trial, the defendant was convicted on all three charges. This appeal followed.

The defendant first argues that the trial court erred in denying his motion to strike a portion of the State's closing argument.[1] He specifically cites the following excerpt:

> . . . he's told a number of different people about this embarrassing situation, even though there's no corroboration that's necessary under the law. . . . And you've heard [the victim]'s testimony and the testimony is important. And he's been consistent. Otherwise, you would have heard testimony — you would have heard the Defense counsel attacking his credibility. You would have heard that he's made 50 statements. You didn't hear any of that because he's been absolutely consistent that he was outside of the car, getting out.

The defendant argues that, although the jury heard testimony that the victim "spoke to several people about his allegation against [the defendant], that testimony was not admitted for substantive or credibility-rehabilitation purposes." Therefore, he concludes, "when the prosecutor in closing urged the jury to use those statements for a credibility-enhancing purpose, the prosecutor argued facts for a purpose for which they were not in evidence. In that sense, the prosecutor argued facts not in evidence." The defendant also contends that the State's observation about defense counsel's "failure to impeach [the victim] with prior inconsistent statements" "improperly shifted the burden of proof onto the defendant."

To determine whether the trial court erred in denying the defendant's motion to strike, we consider whether the prosecutor's statements were impermissible comments and, if so, whether the error requires reversal of the verdict. See State v. Hearns, 151 N.H. 226, 232-33 (2004). In making this determination, we balance a prosecutor's broad license to fashion argument with the need to ensure that a defendant's rights are not compromised. Id. at 233.

If we conclude that the prosecutor's statements were improper, the defendant asks us to apply the following three factors to determine whether the improper statement requires reversal: (1) whether the misconduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit

---

[1] We note that, although defense counsel moved to strike a portion of the State's argument after the State completed its closing, he did not request a mistrial.

cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case.  See State v. Ellsworth, 151 N.H. 152, 155 (2004).  We will assume without deciding that the test that we apply when determining whether prejudicial comments by a prosecutor require that the trial court grant a requested mistrial also applies in the absence of such a request.

We turn first to the question of whether the prosecutor argued facts not in evidence.  As the trial court observed, the jury heard evidence from several witnesses that the victim reported that he had been inappropriately touched by the defendant.  That the victim made the disclosures was not disputed; rather, a major factual dispute was whether the victim was inside or outside of the car when the defendant lifted him up.  Even if we assume without deciding that the prosecutor's limited statement about the consistency of the victim's statements was improper, the misstatement was cured by the trial court's instruction to the jury.

Prior to closing arguments, the trial court instructed the jury:

A person accused of a crime has an absolute right not to take the witness stand to testify. The fact that the Defendant did not testify must not be considered by you in any way in deciding this case. The burden is on the State to prove the Defendant guilty beyond a reasonable doubt. The Defendant has no obligation to present any evidence or to prove his innocence.

You will hear the lawyers discuss the facts and the law in their arguments to you. These arguments are not evidence. Their purpose is to help you understand the evidence and the law. If the lawyers state the law differently from the law as I explained it to you, then you must follow my instructions and ignore the statements of the lawyers. If the lawyers state the evidence differently from the way in which you recall it, then you should follow your own memory of what the evidence was.

(Emphasis added.)

We next consider whether the prosecutor shifted the burden of proof to the defendant when he cited defense counsel's failure to impeach the victim's testimony.  The defendant specifically cites the prosecutor's argument that the jury would have heard defense counsel attacking the victim's credibility if the victim had fabricated the assault; he contends that this argument is "materially indistinguishable" from the argument that we found improper in Hearns.  In Hearns, we ruled that the prosecutor's observation in his closing statement that defense counsel had failed to cross-examine the victim about aspects of her testimony constituted improper comment.  Hearns, 151 N.H. at 233.

3

In his closing, defense counsel challenged the State's case on several bases, including the victim's credibility, first citing the delay between the victim's disclosure and the subsequent report to law enforcement authorities. He noted that the victim's mother, the pastor's wife, and the pastor all failed to immediately report the victim's disclosure of the assault, speculating that "a reasonable inference from the evidence" is that they "had a reason to be skeptical and to doubt that anything sexual or anything criminal had actually occurred . . . . And if they have reason to doubt, you do, too." And he questioned the plausibility of the victim's report: "Would a person who was seeking sexual arousal or gratification pick up a child, by the buttocks and by the penis, for a brief moment in a church parking lot in broad daylight?"

The State contends that "[r]eminding the jury of defense counsel's decision not to present evidence contrary to [the victim's] testimony does not equate with shifting the burden of proof to the defendant" and that if "the prosecutor's remarks implied that the defendant held the burden of proof, they constituted a permissible response to the defendant's closing argument."

We have held that a defendant's decision not to present evidence in his own defense provides "no basis for an adverse comment by the prosecutor." State v. Fowler, 132 N.H. 540, 545 (1989). However, even if the prosecutor's comment violated this principle, we conclude that the isolated nature of the statement and the trial court's instructions prevented it from affecting the outcome of the case. Id. at 233-34.

The defendant argues that "the prosecutor's conduct was neither isolated nor inadvertent," because he attempted repeatedly during trial to elicit evidence that the victim had made prior statements consistent with his trial testimony. That the prosecutor argued that the victim had been consistent in his reports that he had been assaulted was not the portion of the State's closing that can be categorized as "burden-shifting." Rather, it is the State's assertion that "you would have heard defense counsel attacking his credibility" that underlies his argument. Based upon the record before us, we conclude that this was an isolated statement.

Following closing statements, the trial court reiterated a portion of its instructions, again cautioning the jury:

> When you've considered and weighed all the evidence, you must make one of the following findings with respect to each charge that is before you. If you have a reasonable doubt as to whether the State has proved any one or more of the elements of the offense charged, you must find the Defendant not guilty. However, if you find that the State has proved all the elements of the offense charged beyond a reasonable doubt, then you should find the Defendant guilty.

4

Given the evidence presented to the jury, we conclude that any prejudice that might have been created by the single statement of the prosecutor was unlikely to have affected the outcome of the case. As the State aptly observes, the jury heard the victim describe the assaults and also heard the taped interview of the defendant by the State Police in which he admitted: "I touched him inappropriately." The issue which remained for the jury to resolve was whether his purpose in doing so was for sexual arousal or gratification.

We next address the defendant's argument that the trial court erred by admitting certain statements made by Detective Stephens while conducting the defendant's interrogation. Trial courts have broad latitude when ruling on the admissibility of potentially unfairly prejudicial evidence; we will affirm those decisions absent an unsustainable exercise of discretion. State v. Willis, 165 N.H. 206, 216 (2013). To establish that the trial court's exercise of discretion is unsustainable, the defendant must show that the ruling was clearly untenable or unreasonable to the prejudice of his case. Id. at 216-17. We considered in Willis the admissibility of police officers' statements made during an interrogation that bear on the credibility of a witness. Id. at 217-20. We endorsed the distinction recognized by other courts between an investigating officer giving an opinion as testimony before a jury and an investigating officer giving an opinion during the interrogation of a suspect. Id. at 218. "By making such comments, the officer is not trying to convince anyone — not the defendant (who knows whether he or she is telling the truth), other officers, a prosecutor or the jury — that the defendant was lying, but rather, is engaging in an interrogation technique aimed at showing the defendant that the officer recognizes the holes and contradictions in the defendant's story, thus urging him or her to tell the truth." Id. (citation, quotations and brackets omitted). We further recognized however, "that certain tactics, which may be permissible for purposes of interrogating a defendant, are not necessarily also admissible at trial for consideration by the jury." Id. at 219.

Prior to allowing the State to play the redacted recorded interview at trial, the court instructed the jury:

> To the extent that Det. Stephens makes any assertive statements, you may not consider his statements for their truth, but merely for the fact that he's said them and for their effect o[n] Mr. Howe, who is listening to them, so that you can understand Mr. Howe's response only by hearing what Det. Stephens said just before Mr. Howe's response. So again, Det. Stephens' statements may not be considered for their truth, just how they affect Mr. Howe and elicit his response.

The defendant challenges the admission of four statements made by the detective: (1) "[T]hat you didn't need to. I don't think it's saying that you had to grab him as you did because he was so panicky. I think you had a moment of weakness, Leslie. You're shaking your head yes."; (2) "But we both know why

you did it"; (3) "You know that doesn't make sense, don't you?"; and (4) "But we all know. Everyone sitting here knows and God knows. This happened on church property. And like I said, one of your first steps -- "

The trial court ruled that the first statement was admissible because "the Defendant's response -- both the detective's statement as to what Mr. Howe was doing during this particular portion of the interview, that is, shaking his head yes, and the Defendant's response, can only be understood . . . by understanding what immediately preceded it." The trial court found that the second statement provided the "basis and context" for the defendant's subsequent response, which was "All I did was try to get him out of the car. And I reached wherever I could get a hold of." The third statement followed the defendant's description of how he allegedly picked up the victim and preceded his statement: "Well, that's the way it happened." We conclude that these rulings are sustainable.

The trial court ruled that the fourth statement was admissible because it explained the defendant's subsequent statement: "He really did panic, you know. I didn't understand why because I couldn't see any reason for it, but I could see he was feeling it." Even if we assume without deciding that the probative value of this statement was outweighed by the danger of unfair prejudice, the trial court's detailed limiting instructions advised the jury that it could not consider Detective Stephens' statement for its truth. See Willis, 165 N.H. at 225 (juries are presumed to follow instructions). Accordingly, we conclude that reversal is not warranted. See id. at 226.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

6